Irving Lang, J.
This is an application to fix bail on a complaint issued from this court charging the defendant with multiple bombings in New York City. In order to understand the nature of the case and the application involved herein, it is important to set out a chronology of events.
On November 13,1969, the defendant was arrested by Federal and city officials in possession of two dynamite bombs each equipped with a timing device and blasting cap and a fully loaded .38 caliber pistol. He was arraigned on that day before a United States Commissioner on a complaint of a violation of section 371 of title 18 of the United States Code, charging him and George Demmerle, John David Hughey III, Jane Lauren Alpert, and Pat Swinton with conspiracy to violate section 1361 of title 18 of the United States Code. All the above alleged conspirators, with the exception of Pat Swinton, were before the U. S. Commissioner. Miss Swinton was then and is still a fugitive. After a hearing before the Commissioner, bail was set in the sum of $500,000 for each defendant.
On November 14, 1969, the Commissioner reduced the hail on Melville to $300,000, on Demmerle to $200,000, on Hughey to $150,000, and on Alpert to $100,000.
On November 15, 1969, United States District Judge Franker on an appeal from the bail determination of the U. S. Commissioner, reduced the bail on Melville and Demmerle to $50,000, on Hughey to $25,000, and on Alpert to $20,000. Judge Franker, in analyzing the nature of the case and the defendants’ roots in the community, pointed out that the evidence appeared to he “ substantial ” in the case of the defendants Melville and Demmerle and ‘ ‘ far less ’ ’ against the defendants Hughey and Alpert. He pointed out that the pending charge at that stage was “ a serious one though its 5 years maximum term is by no means in the highest range of those on which the court sets moderate bail, or allows release on personal recognizance, everyday. ’ ’
On November 19, 1969, a conspiracy indictment was filed by United States Attorney Robert M. Morgenthau against defendants Melville, Demmerle, Hughey, and Alpsr't.
*368 On January 5, 1970, United States District Court Judge Pollack filed an opinion in which he increased the bail on Melville to $100,000 after full evidentiary and adversary hearings which were held on December 29; 30 and 31, 1969, with respect to the crime and “presented for the first time tangible convincing adversary tested proof of crimes of enormous import and gravity
On January 14, 1970, a superseding indictment was filed by U. S. Attorney Robert M. Morgenthau charging the defendants Melville, Hughey, Alpert, and Swinton with 23 counts of conspiracy and various substantive violations of the U. S- Code. Consequently, instead of facing a maximum five-year term of imprisonment, the defendants now faced terms in excess of 200 years.[1]
George Demmerle was not a defendant in the superseding indictment, it having been revealed that he, at all times, was an undercover Government agent.
On January 15, 1970, the defendant Melville pleaded to the superseding indictment and bail was set in respect to that indictment not only in the fiscal sum of $100,000' but additional conditions were imposed. The defendant was required to return to the custody of the United States Marshal at 6:00 p.m. every day to remain in custody until 9:00 a.m. of each succeeding morning; his travel was restricted to the Borough of Manhattan and he was prohibited from entering any facilities of a general nature leading out of the area such as railroad stations, airports, etc.
The defendant is now prepared to post the $100,000 bail on the Federal indictment and to agree to the other non-financial conditions. He now seeks to have bail fixed on a related case in New York County wherein he is charged in a complaint dated November 14, 1969, with the bombing of six occupied buildings and possession of two dynamite bombs and a fully loaded .38 caliber pistol.
At oral argument before this court on February 26 and 27, counsel for the defendant urges this court to either release the defendant on his own recognizance or, in the alternative to set a “ nominal ” bail. He asserts that the Federal Bail Reform Act of 1966 (U. S. Code, tit. 18, §§ 3141, 3152) contains substantially the same criteria for the setting of bail as do the pronouncements of the New York Court of Appeals in People ex rel. Lobell v. McDonnell (296 N. Y. 109) and People ex rel. Gonzalez v. Warden (21 N Y 2d 18). These factors are:
*369 1. The nature of the offense.
2. The penalty which may he imposed.
3. The probability of the willing appearance of the defendant or his flight to avoid punishment.
4. The pecuniary and social condition of the defendant.
5. The general reputation and character of the defendant.
6. The apparent nature and strength of the proof as bearing on the probability of his conviction.
With commendable candor, counsel for the defendant concedes that the offenses charged are extremely serious (although he also characterizes them as “ political ”) and the penalty faced is quite grave; as he puts it, ‘ ‘ more than two lifetimes ’ \ He also concedes that the proof in the case is, on its face, quite strong. In this connection, the evidentiary hearing before Judge Pollack revealed that the defendant made a full confession to law enforcement officials after being fully advised of his constitutional rights. Further, the evidence adduced the fact that Melville was apprehended with two bombs and a loaded gun in his possession and in addition, his coconspirator Demmerle is now revealed as a special employee of the Federal Bureau of Investigation.
However, counsel for the defendant indicates that these factors were clearly taken into consideration by Judge Pollack and resulted not only in substantial bail of $100,000 but also in extremely stringent nonfinaneial conditions mentioned above. Since the defendant faces more than 200 years imprisonment on the Federal charge, he would not be likely to fear an additional 200 years on the State charges, all of which are encompassed, albeit under different statutes, in the Federal indictment. He also asserts that the defendant has no prior criminal record, except for an arrest in connection with a demonstration at Columbia University. He produced an offer of employment for the defendant as a plumber and stated that a Reverend had indicated a willingness to associate himself with the defendant’s post-institutional adjustment. Indeed, counsel himself maintained a desire to assume a more than attorney-client supervisory role to ensure Melville’s appearance.
The defendant also points out. that his codefendants on the same Federal indictment, and, presumably, facing the same potential punishment, are currently on bail in a much lesser amount and under much less severe nonfinaneial conditions.
In response to this court’s inquiry, counsel for the defendant indicated that the Government was prepared to proceed to trial immediately.
*370 The District Attorney of New York County asks that no bail be set. He requests remand without bail on two theories. He argues that no bail should be set, because he believes that the defendant, in light of all the circumstances of this case, will jump whatever bail is posted. He claims that Judge Pollack’s findings leave no doubt that the defendant has no roots in the law abiding community. He believes that a reading of Judge Pollack’s findings of fact clearly suggest that the District Court would have denied bail in the exercise of sound discretion, given the statutory authority which he lacked. He also says that Demmerle revealed that Melville claimed he had contacts with Canadian terrorist bombers, who were fugitives and for whom Melville arranged transportation to Cuba.
The thrust of the People’s second argument for no bail is that the defendant’s being free on bail would constitute a grave danger to society. The Federal Bail Reform Act mandates the fixation of bail in noncapital cases and can consider no factors other than a defendant’s likelihood to return for trial. However, the District Attorney contends that neither the Federal nor State constitutions, nor any judicial or legislative enactments of the State of New York, prohibit a State court from denying bail because of the threat of the defendant at liberty to the community at large. In this connection, he alerts the court to the heinous nature of the crimes involved. In each of the six instances between July 26, 1969, and November 12, 1969, recited in the complaint, high explosive devices were detonated with two timing mechanisms, in buildings which were occupied at the time of the bombing. The buildings, in various parts of the city, were the United Fruit Pier, the Marine Midland Grace Company, the Chase Manhattan Bank, the RCA Building, the General Motors Building and the Criminal Courts Building. In the Marine Midland bombing, 19 persons were injured and, according to the District Attorney, were it not for a steel partition, he would undoubtedly be facing multiple murder charges. The District Attorney also contends that the defendant (through the statement of Demmerle) was involved in the theft of a large quantity (150 pounds) of dynamite and the largest portion of these explosives is still unaccounted for. He claims that even under the rigid conditions imposed by Judge Pollack, the defendant could avoid surveillance and strike again. Indeed, he maintains that Melville had evaded a surveillance prior to his bombing of the Criminal Courts building.
Finally, the District Attorney asserts that there is a clear distinction between the codefendants who are out on bail and *371 Melville. He claims that Melville is the “ engineer ” who not only made and planted the bombs but is the only one of the conspirators capable of such action.
Both the United States and New York State Constitutions have substantially the same requirements with respect to bail. The Eighth Amendment to the U. S. Constitution and section 5 of article I of the Constitution of the State of New York provide that ‘ ‘ Excessive bail shall not be required ’ ’.
Both the opinions of the United State's Supreme Court and the New York Court of Appeals indicate that the constitutional provisions require that, if bail is set, it not be excessive, but that there is no absolute right to bail. As the Supreme Court said in Carlson v. Landon (342 U. S. 524, 545 [1952]), “ The bail clause was lifted with slight changes from the English Bill of Rights Act. In England that clause has never been thought to accord a right to .bail in all cases, but merely to provide that bail shall not be excessive in those cases where it is proper to grant bail. When this clause was carried over into our Bill of Rights, nothing was said that indicated any different concept.”
And the New York Court of Appeals has said in People ex rel. Shapiro v. Keeper of City Prison (290 N. Y. 393, 398) that New York’s Constitution, by prohibiting excessive bail, “ accords no accused any right to bail, but serves only to forbid excessiveness ’ ’. The court went on further to say that “As a matter of logic it might seem that a prohibition against excessive bail should imply a right to bail in appropriate amount in all cases, but the history of the law of bail negatives such an implication. At common law the courts had discretion in all cases after indictment, to grant or deny the application, although they ordinarily did grant it in all except capital cases * * * The reference in our Constitution to [1] excessive bail, ’ therefore, referred only to amount of bail.”
Indeed, denial of pretrial release is consistent with the practice in other countries. “ Sweden, Norway, Denmark and West Germany deny pretrial release as a matter of course, because of the danger to society and the risk of flight. More importantly, in England, the source and foundation of the development of our system of law, the English Bill of Rights did not grant ‘ a right to bail in all cases. ’ Prior to 1789, bail was either not authorized or within the discretion of English courts in serious felony cases. Even after the adoption of the eighth amendment in the United States, England has continued to grant discretion to its judges and magistrates to deny pretrial release to offend *372 ers charged with felonies or, in some circumstances, with misdemeanors (Mitchell, Bail Reform and the Constitutionality of Pretrial Detention, 55 Va. L. Rev. 1223, 1231.)
Though the right to bail is by no means absolute, of course the discretion may not be abused and if bail is fixed it may not be so high as to be arbitrary and unreasonable; i.e., ‘ ‘ excessive ”. For there is a strong judicial and public policy against unnecessary pretrial detention. State and Federal statutes have imposed limitations upon the right to deny bail. Under Federal law since 1789 a person has had a right to bail in a noncapital case. As the Supreme Court of the United States said in dictum Stack v. Boyle (342 U. S. 1) “ This traditional right to freedom before conviction permits the unhampered preparation of a defense and serves to prevent the infliction of punishment prior to conviction ” (p. 4). The court pointed out that our traditional presumption of innocence would lose its meaning unless the right to bail before trial were preserved and pointed out that a bail bond “ subject to forfeiture serves as additional assurance of the presence of the accused. Bail set at a figure higher than an amount reasonably calculated to fulfill this purpose is ‘ excessive ’ under the Eighth Amendment.” (p. 5.)
Of course the presumption of innocence applies equally to capital cases where bail cannot be set and where it is traditionally denied under both Federal and State law. There is no real conflict between Carlson v. Landon cited by the People and Stack v. Boyle cited by the defendant. In fact, they complement each other. While Carlson v. Landon reaffirms the principle that bail is not an absolute right, Stack v. Boyle indicates that the power to deny bail should be used sparingly.
New York State law on the subject derives from section 553 of the Code of Criminal Procedure which states that a defendant may be admitted to bail before conviction as follows, “1. As a matter of right, in cases of misdemeanor, violation and traffic infraction; 2, As a matter of discretion, in all felony cases; the court may revoke bail at any time where such bail is discretionary with the court.” In People ex rel. Shapiro v. Keeper of City Prison (290 N. Y. 393, 398, supra) the Court of Appeals thoroughly analyzed the statutory and constitutional bail provisions and held that the denial of bail in a noncapital felony case may be proper in certain circumstances. The court, however, in promulgating the rule issued the following caution, “We are by no means holding that this grant by the Legislature to the courts of discretionary power to deny bail in felony *373 cases, can be exercised arbitrarily. Denial of bail is no light matter and needs to be buttressed by a real showing of the reasons therefor.”
Under what circumstances then may bail be denied?[2] It is this court’s view that bail may be denied for two reasons. First, where it is reasonable to assume that the defendant will flee the jurisdiction and avoid trial if admitted to bail. Secondly, if his release on bail poses a threat to the welfare and safety of the community. As indicated above, the Court of Appeals established six criteria for fixing bail in People ex rel. Lobell v. McDonnell (296 N. Y. 109, 111, supra). Interestingly enough in. the Lobell case the Court of Appeals held that bail set by the nisi prius court of $250,000 on an indictment charging forgeries and grand larcenies was constitutionally excessive and using the six criteria set forth reduced bail to $100,000. But the court clearly indicated that 1 ‘ Whether or not this relator was to be admitted to bail at all, was a matter of discretion for the County Court ”.
In People ex rel. Fraser v. Britt (289 N. Y. 614) the defendant had been indicted by a Grand Jury on February 14, 1941, on a charge of abortion and was admitted to bail February 20, 1941. On November 28,1941, she was again indicted by the Grand Jury at Erie County on a charge of abortion and manslaughter first degree. Bail was denied on an application for a writ of habeas corpus and the defendant appealed to the Court of Appeals claiming that the refusal to fix bail violated the New York State Constitution. The Court of Appeals unanimously affirmed the denial of bail.
The criteria set forth in Lobell and subsequent cases make no reference to the question of the potential danger of the defendant if given pretrial release. It would seem strange that the question of the threat which the defendant poses to the community should not be considered in the determination of bail. However, logic dictates that a defendant’s potential danger to the community is not considered as a factor in the designation of bail is because it is irrelevant to the question of the amount of bail. If a defendant would present a clear and present danger if free in the community then it would not matter whether he had posted $100,000 bail or was released on his own recognizance. Danger to the community has no relationship to the ability of a defendant to post a bond. Therefore, if a *374 court determines that a defendant would be a threat if released prior to trial its duty is to remand him rather than set an extremely high bail.
The recent case of People ex rel. Klein v. Krueger (25 N Y 2d 497, 502) contains, for the first time, an explicit discussion of criteria for the denial of bail other than possible flight. Judge Bbeitel,, speaking for the majority, ruled that the “ only critical support actually offered for the denial of bail is not danger of flight * * * but rather the danger to potential witnesses ”. While rejecting the ground under the specific circumstances of that case Judge Bbeitel pointed out “ This is not to say that in other cases, differently circumstanced, the risk of witness-tampering by the imprisoned relator is not reasonably inferable.”
I conclude, therefore, that pretrial detention for the safety of the community, as well as to avoid flight from prosecution, is constitutionally justifiable in extraordinary cases.
The question remains as to whether this court should deny bail on either or both of the above grounds in the instant case.
This court is not a reviewing court of the action of Judge Pollack. Were Judge Pollack’s opinion predicated upon statutory powers and limitations similar to that of the State of New York I would feel persuaded by it. Since he was aware of the instant case, I would fix nominal bail or release the defendant on his own recognizance on the issue of availability for trial. But as Judge Pollack stated in his opinion filed January 5, 1970, ‘1 the law plainly is that before a conviction a person arrested for a non-capital offense shall be admitted to bail and a defendant should not needlessly be detained * * * [A]n order of release on proper terms is, in my opinion, an absolute right prior to conviction”. Judge Pollack, of course, was interpreting Federal statutory law and this is clearly not the law of New York State. (People ex rel. Shapiro v. Keeper of City Prison, 290 N. Y. 393, supra; see, also, United States ex rel. Covington v. Coparo, 297 F. Supp. 203.)
Furthermore, Judge Pollack found 11 the defendant has no tangible or intangible roots in the law-abiding community. He has no employer. He is separated from his wife and eight-year-old child. He claims indigency. In short, there are no moral, social or financial principles or ties which could act as a reasonable assurance or influence in having him observe the obligation to appear in court as required or for trial. The obvious incentive for this defendant without roots or other influencing factors would be to flee the.jurisdiction or hide and fail to appear *375 for trial under the circumstances of such a strong case against him
The People also point out that the defendant has little, if any, ties with the persons who are posting the bail. The Assistant District Attorney attempted to show this court that the guarantors or sureties were members of or connected with certain ‘ ‘ groups ’ ’ who might be interested in having the defendant flee. This is irrelevant. Whether or not the sureties are revolutionaries or sincerely motivated from a civil liberties point of view is immaterial. What is relevant, however, is the fact that, unlike the usual situation with respect to the posting of the bail, neither the defendant nor his family or close personal friends would suffer any financial loss if he jumped bail. Therefore the money guarantee, although substantial in terms of amount, is not of as great consequence as it would ordinarily be. While the defendant faces extremely rigorous nonfinaneial conditions with respect to his mobility if released under the terms of the Federal order, it is my belief that no amount of surveillance could prevent the defendant from fleeing the jurisdiction of this court. It is my further belief that under the circumstances of this case, the compulsion to jump bail would be irresistible. The defendant faces extremely serious punishment under both State and Federal charges. His admitted connections to other countries (according to the FBI special employee), the wanton and callous nature of the acts with which he is charged and the proof of which is apparently so strong, all indicate that he would have no respect for the processes of either this or the Federal court.
Of even greater concern to this court is the danger of this defendant to the community. There -is no indication whatsoever that the course of conduct upon which the defendant apparently embarked and which created such fear, turmoil, and terror among our citizens has been rerouted to more socially responsible directions. It should be re-emphasized that there is a large amount of missing dynamite from the theft attributed to the defendant.
Denial of bail because of the dangerous potential of a defendant if let at large in the community should only be imposed in rare and extraordinary cases. In those cases the evidence must be clear and convincing, the peril must be apparent. Further the prosecutor must be prepared to proceed as is the present posture of this case.
As Justice Jackson stated in Williamson v. United States, sitting as a circuit Justice (184 F. 2d 280, 282) “Imprison *376 ment to protect society from predicted but unconsummated offenses is so unprecedented in this country and so fraught with danger of excess and injustice that I am loath to resort to it ”. This court is also loath to resort to the denial of bail on such grounds but reluctance does not imply either the lack of authority or obligation to do so in the proper case. In the words of Supreme Court Justice William O. Douglas: “ If, for example, the safety of the community would be jeopardized, it would be irresponsible judicial action to grant bail.” (Carbo v. United States, 7 L. ed. 2d 769, 774).[3] This court cannot ignore this defendant’s manifest threat to safety and welfare of this community.
This court finds that the defendant would not appear for trial if admitted to bail and further finds that he would constitute a danger if admitted to bail pending trial. The defendant is held without bail with leave to renew his application if the prosecuting agency is not prepared to afford him a speedy trial.

. Subsequent to this writing, Judge Pollack dismissed 4 counts of the indictment reducing by 40 years the maximum that Melville would face. It is now 195 years.

. In this regard it should be noted that New York law permits the detention of persons alleged to be mentally ill or narcotic addicts prior to commitment proceedings without bail. (See Mental Hygiene Law, arts. 5, 9.)

. Both Williamson and Carbo related to bail applications subsequent to conpending appeal. Justice Jackson granted bail and Justice Douglas denied bail. The Williamson was a so-called “ communist ” ease and involved substantial First Amendment questions. Carbo was an extortion case.