[Sac. No. 7901. In Bank. Nov. 2, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
UNITED BONDING INSURANCE COMPANY et al.,
Defendants and Appellants.

**COUNSEL**

MacDonell, Bell & Sandberg and Thomas W. Bell, Jr., for Defendants and Appellants.

Richard W. Dickenson, County Counsel, Jerry D. Hall, Deputy County Counsel, Joseph H. Baker, District Attorney, and Alvan E. Norris, Assistant District Attorney, for Plaintiff and Respondent.

**OPINION**

**WRIGHT, C. J.**—United Bonding Insurance Company and Victor J. Pimper, its agent, appeal from an order denying a motion to vacate the forfeiture of United's bail bond posted to secure the release from custody of Douglas McArthur Mock, in criminal proceedings then pending against him and six codefendants.[1] We have determined that the motion should have been granted and we reverse.

Mock was charged by indictment on June 29 and arraigned on June 30, 1967.[2] He entered pleas of not guilty to the charges and, after various

---

[1] Mock and his codefendants were jointly charged with assault with a deadly weapon (Pen. Code, § 245) and battery upon a peace officer (Pen. Code, § 242). Each of Mock's codefendants, after a trial jury had been selected, withdrew pleas of not guilty and entered a plea of guilty to one of the charges or a lesser violation, and there are no trial proceedings now pending which involve any of them.

[2] Mock and his codefendants were first charged by complaint and taken into custody. The bail bond here in question, in the amount of $5,000, was issued by United to effect Mock's release from such custody and is in the form prescribed by Penal Code section 1278 in those cases where criminal charges are brought by the filing of a

pretrial motions and proceedings, trial was set for January 8, 1968. On that date Mock failed to appear. The public defender, who theretofore had represented Mock, stated that he knew of no reason why Mock was not present. There was then pending before the court the public defender's motion to be relieved of his representation of Mock and certain of the other codefendants on the ground of a conflict in interest between the codefendants, and the motion was subsequently granted. The court stated at that time and in that connection that other counsel would be appointed for Mock as soon as he could be notified and appeared before the court. The court was then advised that Mock's whereabouts were unknown and that he might have fled. The court issued a bench warrant for Mock's appearance,[3] but did not order a forfeiture of the bond previously posted to secure his release.

---

complaint. Before pleas were entered, however, a grand jury indictment was filed charging the instant offenses against all codefendants, including Mock. Such charges are the same as two of the total of five offenses initially charged against Mock by complaint. The complaint as to all codefendants was thereupon dismissed. Court records disclose that at such time "bail on all defendants [was] . . . ordered continued and transferred to the Grand Jury Indictment with the consent of the bondsman." It also appears of record that the "Public Defender informed the Court that the bail bondsman on defendant Mock will remain on the bail bond of said defendant." Although there is no record confirmation by United or its agent, appellants do not now contend that because of such lack of confirmation or because their bond does not strictly comply in form to that prescribed where criminal charges are brought by indictment (Pen. Code, § 1287), the bond is not an undertaking that Mock would appear as required in the instant proceedings. United has conducted itself throughout these proceedings as if its bond was regular in all respects.

[3] The reporter's transcript of proceedings on January 8, 1968, discloses the following:

"The Court: Mr. Mock is the one defendant who is not present. I think perhaps there should be, when you can reach him and when we have appointed counsel, he should make a special appearance in Court so we could confirm this trial date with him and perhaps when we—we can work with you, Mr. Chargin [public defender], and Mr. Wells [attorney for a codefendant]. Apparently he has been present before.

"Mr. Wells: I can't find Mr. Mock.

"The Court: You can't find him?

"Mr. Wells: No, sir. Mock, I can't find him.

"The Court: If any of the other defendants know of his whereabouts, if they will advise any of the attorneys so that we know how to reach him—or if you know Mr. Baker [deputy district attorney]?

"Mr. Baker: I have some information that he's jumped bail somewhere else, your Honor. I'm not—I haven't verified that, though.

"The Court: I see. We may have a problem."

Later on the same day, after proceedings had been continued and resumed, the following appears:

"Mr. Baker: Your Honor, in regards to the defendant Mock, the People request you issue a bench warrant.

"The Court: All right. You think—

"Mr. Baker: The information has been partially verified that he has skipped bail in Contra Costa County.

"The Court: I see. All right, the Court will issue a bench warrant for his appearance then and that I should probably set bail on the bench warrant as well.

"Mr. Baker: Yes, your Honor."

When the cause was called for trial on April 16, 1968, Mock was again absent and, apparently, no contact had been made with him. On May 14, while proceedings in the trial court involving his codefendants were still pending, the court made the following order: "The defendant Douglas McArthur Mock having failed to appear in Court on January 8, 1968, as ordered by the Court, Bail is now ordered forfeited, pursuant to Section 1305 of the Penal Code. . . ." On that same day the clerk gave notice of the forfeiture to United and its agent (appellants herein hereinafter designated "United"), in the manner prescribed by Penal Code section 1305.[4]

On June 4 United filed a notice of motion for an order setting aside the May 14 order of forfeiture, and for exoneration of the bail bond. On June 13, before argument on the motion and without notice to the parties the court entered what purports to be a *nunc pro tunc* order, effective as of the date of its initial order of forfeiture (May 14), reciting that Mock's failure to appear on January 8 "was without sufficient and without any excuse."[5] Again notice was given on the same date as the order in the

---

[4]Penal Code section 1305 then provided in pertinent part: "If, without sufficient excuse, the defendant neglects to appear for arraignment or for trial or judgment, or upon any other occasion when his presence in court is lawfully required, or to surrender himself in execution of the judgment, the court must direct the fact to be entered upon its minutes and the *undertaking of bail . . . must thereupon be declared forfeited,* and . . . the clerk of the court shall, promptly upon entering the fact of such failure to appear in the minutes, mail notice of the forfeiture to the surety on the bond. . . . If the clerk fails to mail such notice within 30 days after such entry, the surety or depositor shall be released from all obligations under the bond. But if at any time within 180 days after . . . mailing such notice of forfeiture, the defendant and his bail appear, and satisfactorily excuse the forfeiture or the defendant's neglect . . . the court shall direct the forfeiture of the undertaking . . . to be discharged upon such terms as may be just." (Stats. 1967, ch. 109, § 1; italics added.)

[5]The order of June 13, 1968, reads as follows:

"Heretofore on January 8, 1968, the defendant Douglas Arthur Mock was scheduled to stand trial by jury with various co-defendants at 9:30 a.m. on January 8, 1968. The said defendant did not appear in Court at the said time and the Court thereupon inquired if there was any reason or excuse for his non-appearance and was advised that there was not. The matter was thereupon continued to 1:30 p.m. on the same date in connection with the re-scheduling of a trial date and the appointment of new attorneys for some of the co-defendants. The Court again inquired as to whether or not there was any reason for the defendant Mock's non-appearance and was advised that there was not and was also advised that he apparently had jumped bail on another charge in Alameda County. The Court thereupon directed the issuance of a bench warrant for his arrest.

"Thereafter the other defendants all appeared in Court on the various dates and eventually entered pleas of guilty to various charges. On May 14, 1968, the Court entered a Minute Order declaring that the defendant Douglas Arthur Mock should have his bail forfeited for failure to appear on January 8, 1968, pursuant to Section

manner required by section 1305. United's motion to set aside the forfeiture was eventually denied on September 24, 1968, and the instant appeal is from that order of denial.

■ United claims that because the provisions of section 1305 are jurisdictional, a failure on the part of the court to comply therewith in ordering a forfeiture in reliance on that section renders the order null and void. ■ "[W]here a statute requires a court to exercise its jurisdiction in a particular manner, follow a particular procedure or subject to certain limitations, an act beyond those limits is in excess of its jurisdiction." (*Burtnett* v. *King* (1949) 33 Cal.2d 805, 807 [205 P.2d 657, 12 A.L.R.2d 333].) Illustrative of an application of the foregoing rule to section 1305 is the undisputed holding that a surety must appear within 180 days after the date of the entry of the order of forfeiture, or after the date of the mailing of notice thereof, where such mailing is required, or suffer the court's loss of jurisdiction to discharge the forfeiture. (See *People* v. *Black* (1961) 55 Cal.2d 275 [10 Cal.Rptr. 459, 358 P.2d 915].) The primary question in the instant case, however, is whether there is a jurisdictional although not express time limit within which an order of forfeiture must be made *after* a bailee's default. ■ If there is such a time limit which, in the instant case, has been exceeded then the effectiveness of the *nunc pro tunc* order need not be considered for either of two reasons: (1) the order purports only to amend and correct a defect in the earlier order of forfeiture and does not purport to advance its effective date; and (2) a jurisdictional time limit which has been exceeded cannot be defeated by the simple device of a *nunc pro tunc* order (*People* v. *Black, supra,* 55 Cal.2d 275, 277; *Osmont* v. *All Persons* (1913) 165 Cal. 587, 591 [133 P. 480]).

There are conflicting appellate decisions as to when, with respect to a bailee's default, an order of forfeiture must be entered, but no court has squarely faced the issue. In *Los Angeles County* v. *Metropolitan C. Ins. Co.*

---

1305 of the Penal Code. Thereafter notice of the forfeited bail bond was given to the bonding companies on May 20, 1968.

"It is a fact that the defendant failed to appear on January 8 without sufficient excuse and the Court made such a finding in its oral pronouncements. However, this was not entered in the Minute Order which was subsequently made on May 14. The Court hereby directs the issuance of a nunc pro tunc order in connection with the forfeiture of bail and expressly makes the finding that the defendant failed to appear for his scheduled trial date and further that his failure to appear was without sufficient excuse and without any excuse. In view of these findings the Court again directs that the defendant's bail be ordered forfeited nunc pro tunc, as of May 14, 1968, for his failure to appear on a scheduled trial date on January 8, 1968, without sufficient excuse being offered to the Court for his non-appearance and said bail is ordered forfeited pursuant to Section 1305 of the Penal Code of the State of California with directions to the Clerk to issue notice of the forfeited bail bond in accordance with said sections of the Penal Code."

(1933) 135 Cal.App. 26 [26 P.2d 699, 27 P.2d 914], the court was called upon to determine when the cause of action for a civil judgment upon a forfeiture accrued (Pen. Code, § 1306),[6] and held that it accrued only upon the expiration of the statutory period commencing with the order of forfeiture and during which the forfeiture may be excused. In that case almost five years had elapsed between the time the defendant failed to appear and the order of forfeiture. An action pursuant to section 1306, although commenced by Los Angeles County beyond the applicable limitation period if measured from the time of the defendant's default, was nevertheless held to lie as it was brought well within the period when measured from the time of the order of forfeiture. Without discussing jurisdictional or other issues related to when the order of forfeiture must be entered, the court stated that the statute (Pen. Code, § 1305) "places no limitation upon the time within which such forfeiture shall be entered." (135 Cal.App. at p. 28.) In *People* v. *Burton* (1956) 146 Cal.App.2d Supp. 878 [305 P.2d 302], the appellate department of the superior court, following the lead of the *Los Angeles County* case but again without discussing jurisdictional issues, dealt with forfeitures which had been declared as long as a year after the bailee's failure to appear, and resolved the cause on other unrelated issues which presumed the validity of the forfeitures.

Contrary to the implications in the foregoing cases are inferences which may be drawn from *People* v. *National Automobile & Cas. Co.* (1969) 276 Cal.App.2d 480 [80 Cal.Rptr. 790]. In that case the court was called upon to determine whether the trial court was compelled to declare a forfeiture immediately upon the failure of a bailee to appear. The court stated: "The statute [Penal Code section 1305] does not require that bail must be forfeited each time a defendant does not appear in court . . . . The statute recites two necessary prerequisites before a court must order forfeiture: (1) that the nonappearance of the defendant be '*without sufficient excuse,*' and (2) that the nonappearance must be 'for arraignment or for trial and judgment, or upon *any other occasion when his presence in court is lawfully required.* . . .'" The court noted that although no excuse was given for the defendant's failure to appear, a declaration of forfeiture was withheld on counsel's reassurances respecting his client's intentions and the hearing was continued for 11 days. It was then concluded "that the court acted within its broad discretion under the 'without sufficient excuse' requirement of the statute. Certainly, there is no automatic forfeiture by operation of law." (276 Cal.App.2d at pp. 483-484.)

---

[6]Section 1306 was subsequently amended to provide, as it does now, for the entry of summary judgment following declaration of forfeiture not subsequently set aside. (See *People* v. *New York Indemnity Co.* (1931) 113 Cal.App. 487 [298 P. 849].)

Implicit in the appellate court's resolution of the issues in *National Automobile* is the proposition that the trial court may exercise its sound discretion in determining whether a defendant's failure to appear was "without sufficient excuse." In that case the court was confronted with reassurances by defendant's counsel which apparently suggested to the court that the failure to appear was excusable and, certainly, it cannot be said that the acceptance of the excuse constituted an abuse of discretion. No forfeiture was thus required.

There are sound reasons, however, implicit in the pertinent statutory provisions for holding that a forfeiture of a bail bond, where required, must be timely declared. The law traditionally disfavors forfeitures and statutes imposing them are to be strictly construed. (See 4 Witkin, Summary of Cal. Law (7th ed. 1960) p. 2799; 22 Cal.Jur.2d 504.) In the instant case the statute purports to afford the surety an opportunity to escape the harsh results of a forfeiture. When a declaration of forfeiture has been made the clerk of the court must "promptly . . . mail notice of the forfeiture to the surety." If such notice is not delivered for a period of 30 days, the surety is to be "released from all obligations under the bond." Moreover, the surety has 180 days after notice of forfeiture within which to appear with the defendant, excuse the defendant's neglect to have appeared earlier, and thereby become entitled to a discharge of the forfeiture "upon such terms as may be just." (Pen. Code, § 1305.) If a surety is to be afforded the protections provided by these provisions he must be advised at an early date of the fact of the forfeiture in order that he may institute procedures to locate and compel the appearance of the bailee. Should the surety not have an early opportunity to institute these endeavors the possibility of discharging the forfeiture will be severely prejudiced, and it is manifest that he will suffer such prejudice whether there is an undue delay in advising him after the declaration of a forfeiture or a delay in making the declaration itself.

How soon a declaration of forfeiture must follow a bailee's failure to appear without the court having exceeded its jurisdiction, is a matter which will depend upon the circumstances in the individual case. The language of the statute directs that the court "must thereupon" declare the forfeiture when a defendant's nonappearance is "without sufficient excuse," and when it conclusively appears that there is no excuse as, for example, when the defendant has fled, the statute compels an immediate declaration. The failure to so declare an immediate forfeiture upon the nonappearance of a defendant bailee can be justified only where there is some rational basis for a belief at the time of his nonappearance that there exists a sufficient excuse therefor. What constitutes a sufficient excuse generally rests

within the sound discretion of the trial judge, but it must be manifest that a defendant's failure to appear without explanation is presumptively without sufficient excuse and the burden of rebutting such presumption rests with the defendant's representatives or those who are interested in avoiding a forfeiture. A nonappearance once excused does not constitute an excuse for subsequent nonappearances, and at any such nonappearance without sufficient excuse the court must thereupon declare the forfeiture.

It follows from the foregoing that the court's failure to declare a forfeiture upon a nonappearance without sufficient excuse, either where no excuse is offered or where the finding of an excuse constitutes an abuse of discretion, deprives the court of jurisdiction to later declare a forfeiture. Court minutes which fail to disclose that the court has expressly excused a nonappearance on a record which is silent as to a defendant's reasons therefor, will require a reviewing court to conclude that a nonappearance was without sufficient excuse and that the right to declare a forfeiture not having been exercised was foreclosed. An excused nonappearance, accordingly, should be expressly reflected in the minutes.

In the instant case the court was advised, on January 8, 1968, of matters which strongly suggested that defendant's failure to appear was without sufficient excuse. The deputy district attorney reported that he had "partially verified" that defendant "had skipped bail" in a neighboring county. No explanation which justified the nonappearance was offered. The presumption that the nonappearance was without sufficient excuse was thus not rebutted and was in fact fortified. Accordingly, the trial court was under a compulsion to "thereupon" declare a forfeiture and its failure to do so deprived it of jurisdiction to make the declaration four months later. Any implications which appear in *Los Angeles County* v. *Metropolitan C. Ins. Co., supra,* 135 Cal.App. 26, and in *People* v. *Burton, supra,* 146 Cal.App. 2d Supp. 878 contrary to our holding herein, are disapproved.

Although not essential to the disposition of the appeal, as the order of forfeiture is otherwise invalid, United's further contention that the order is invalid for failure of recitals therein requires our comment. The order as heretofore set out recites the fact of defendant's failure to have appeared in violation of an earlier order to do so, but does not recite that such failure, in the language of section 1305, was "without sufficient excuse." United claims that such a recital is jurisdictional and that the lack thereof in an order declaring a forfeiture renders the order null and void.

United finds support for its contention in *People* v. *Resolute Ins. Co.* (1968) 259 Cal.App.2d 633 [66 Cal.Rptr. 421]. In that case the order declaring a forfeiture recited neither the fact of the defendant's nonap-

pearance nor that it was without sufficient excuse. The court noted that section 1305 provides that when "without sufficient excuse the defendant neglects to appear . . . the court must direct the fact to be entered upon its minutes" and declare the forfeiture of the undertaking of bail. It held that "both facts" (1) the failure to appear and (2) the nonappearance being " 'without sufficient cause' [*sic*]," " 'must' be entered upon the court's minutes in connection with a bail forfeiture." (259 Cal.App.2d at p. 637.)[7]

The particular holding in *Resolute* has been rejected in a subsequent appellate decision involving the identical surety as in the instant case. (*People* v. *United Bonding Ins. Co.* (1969) 274 Cal.App.2d 898 [79 Cal.Rptr. 579].) There the holding in *Resolute* was challenged on a construction of the applicable statutory language. While *Resolute* would require a recital of plural "facts," section 1305 directs only that the singular "fact" be entered upon the minutes. The specific fact to which section 1305 has reference is made clear by its language immediately following that quoted in *Resolute,* wherein it is provided that "the clerk of the court shall promptly *upon entering the fact of such failure to appear in the minutes*, mail notice of the forfeiture to the surety. . . ." (Italics added.)

Not only does the language of the statute provide in clear terms what singular fact must be entered upon the minutes, but good reason also dictates a like conclusion. "If 'sufficient excuse' is shown for [a defendant's] nonappearance, it is unlikely that an order of forfeiture would be made by the court. It is mere surplusage to include the language 'without sufficient cause.' " (*People* v. *United Bonding Ins. Co., supra,* 274 Cal.App.2d 898, 902.) That the additional language which *Resolute* would require is mere surplusage and redundant is further made apparent upon a consideration that such a recital would serve no purpose and supply no additional information to any interested party where the fact of nonappearance already appears and an order of forfeiture has been made. There is no more reason for a recital of an insufficient excuse for the nonappearance than a recital that defendant had previously been ordered to appear on the occasion of his default. Although such matters may be prerequisites to a valid order, the declaration of forfeiture presumes compliance therewith. (Code Civ. Proc., § 1963, subd. 15.) To the extent that it is inconsistent with the views expressed herein, we disapprove contrary language in *Resolute.*

 The trial court's order of forfeiture being a nullity the court im-

---

[7]It might well be argued that the holding is dicta, as the court had already held that as the declaration of forfeiture was made on a date *prior* to the time the defendant was required to appear, "the forfeiture order made on that date was in excess of jurisdiction and void." (259 Cal.App.2d at p. 636.)

properly denied on September 24 United's motion to set aside and vacate the forfeiture. The order of September 24, 1968 is reversed, and the trial court is directed to vacate the forfeiture and exonerate the undertaking.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

On December 1, 1971, the opinion was modified to read as printed above.