[Crim. No. 16504. In Bank. Apr. 18, 1973.]

In re ALBERT B. UNDERWOOD III on Habeas Corpus.

**COUNSEL**

Richard S. Buckley, Public Defender, Philip L. Miller, Richard Plotin and Albert M. Meister, Deputy Public Defenders, for Petitioner.

Joseph P. Busch, District Attorney, Harry Wood, Daniel L. Lieberman and Donald J. Kaplan, Deputy District Attorneys, for Respondent.

**OPINION**

**WRIGHT, C. J.**—We issued an order to show cause in response to an application for a writ of habeas corpus on allegations that the respondent court committed error in denying petitioner bail in violation of Penal Code section 1271 and article I, section 6, of the Constitution. We conclude that the respondent court did indeed err in disallowing petitioner an opportunity to post a reasonable bail.

At approximately 4:15 a.m. on June 20, 1972, petitioner, a senior student at the University of California at Santa Barbara, was seen in Tarzana as he ran from a residence. He was subsequently arrested in Los Angeles

while in possession of two homemade sawed-off shotguns and two live shotgun shells, and was booked at the Los Angeles Police Department's West Valley Station. On June 22, 1972, petitioner was released on $500 bail.

During the evening of June 23, 1972, or early morning of June 24, 1972, a package addressed to the West Valley Station was placed in a postal deposit box in Tarzana. An examination of the package revealed that it contained a "live" pipe bomb which was subsequently defused.

On allegations of probable cause not here challenged a warrant was issued for the search of petitioner's apartment and automobile. Police officers, in executing the searches authorized by the warrant, discovered numerous articles which were similar to or identifiable with the components used in the alteration of the shotguns and the construction of the pipe bomb. Thereafter petitioner was charged with violations of Penal Code sections 12020 (possession of a sawed-off shotgun), 664 (attempted murder (see § 187)), 12308 (attempt to explode a destructive device with intent to commit murder), 12303.3 (attempt to explode a destructive device with intent to injure people or property) and 12303 (possession of a destructive device).

At the time of petitioner's arraignment on the charges relating to the pipe bomb a motion to be released on bail was denied. Petitioner later renewed the motion and the court stated, in again rejecting the application: "Due to the fact that there is a dearth of legal opinion in the matter it is usually up to the judge to make a decision. If the judge doesn't make a decision we never have any new law. If I am reversed I have been reversed before and I believe will be again. But I am not afraid to make a decision if I believe in that one. I believe as Justice Douglas stated where the safety of the community would be jeopardized it would be irresponsible judicial action to grant bail. . . . The time has come where we must restrain violence and death as much as possible. If it is necessary to resolve it by denying bail to those who can or are able to perpetrate murders and violence and crimes of that nature, then the court at this time will not be reluctant to deny bail, and bail is denied. Let the District Court of Appeal make their ruling."[1]

The People, in arguing the propriety of the denial in the instant circumstances, are confronted with Penal Code section 1271, which provides: "If the charge is for any other [than a capital] offense, [the defendant]

---

[1]The trial court apparently relied on *Carbo* v. *United States* (1962) 7 L.Ed.2d 769 [82 S.Ct. 662]. In that case Justice Douglas, sitting in circuit, discussed the right to bail pending appeal. It is well recognized that in such circumstances the right to bail is substantially different from the right to bail pending trial.

may be admitted to bail before conviction, as a matter of right."[2] Further, article I, section 6, of the Constitution states in pertinent part: "All persons shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or the presumption great. Excessive bail shall not be required, . . ."[3]

Notwithstanding these constitutional and statutory commands some appellate courts have "read into" the bail provisions a "public safety" exception. (*Bean* v. *County of Los Angeles* (1967) 252 Cal.App.2d 754 [60 Cal.Rptr. 804]; see also, *Evans* v. *Municipal Court* (1962) 207 Cal.App.2d 633 [24 Cal.Rptr. 633]; *In re Gentry* (1962) 206 Cal.App.2d 723 [24 Cal.Rptr. 208]; *In re Henley* (1912) 18 Cal.App. 1 [121 P. 933].) Typical of such judicial construction is the following language in *Bean*: "A defendant in a criminal action is entitled to be released on bail as a matter of right except for a capital offense when the proof is evident or the presumption great (Cal. Const., art. I, § 6) or *where for the safety of the individual or for the protection of society it would be proper to deny bail.* [Citations.]" (252 Cal.App.2d at p. 757; italics added.)

■ The reading of the law enunciated in *Bean* and similar cases misconceives the purpose of our bail system and they are disapproved to the extent that they hold that there is a "public safety" exception. The purpose of bail is to assure the defendant's attendance in court when his presence is required, whether before or after conviction. (*People* v. *United Bonding Ins. Co.* (1971) 5 Cal.3d 898 [98 Cal.Rptr. 57, 489 P.2d 1385]; *In re Newbern* (1961) 55 Cal.2d 500 [11 Cal.Rptr. 547, 360 P.2d 43]; see also *In re Brumback* (1956) 46 Cal.2d 810 [299 P.2d 217].) Bail is not a means for punishing defendants (*Sawyer* v. *Barbour* (1956) 142 Cal.App.2d 827 [300 P.2d 187]) nor for protecting the public safety. Such objectives are provided for otherwise.

---

[2]Section 1271 must be read in conjunction with section 1270. Section 1270 states: "A defendant charged with an offense punishable with death cannot be admitted to bail, when the proof of his guilt is evident or the presumption thereof great. The finding of an indictment does not add to the strength of the proof or the presumptions to be drawn therefrom." Section 1271 qualifies section 1270 providing: "If the charge is for any other offense, he may be admitted to bail before conviction, as a matter of right."

[3]The full text of article I, section 6, is: "All persons shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or the presumption great. Excessive bail shall not be required, nor excessive fines imposed; nor shall cruel or unusual punishments be inflicted. Witnesses shall not be unreasonably detained, nor confined in any room where criminals are actually imprisoned." We do not consider and no issue is presented in the instant case as to what constitutes excessive bail. (See Pen. Code, § 1275.)

The Eighth Amendment to the United States Constitution, unlike our state Constitution, guarantees only that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Relying on the common law, the Supreme Court in *Carlson* v. *Landon* (1952) 342 U.S. 524 [96 L.Ed. 547, 72 S.Ct. 525][4] held that because the amendment does not grant the *right* to bail it can be construed to mean only that bail shall not be excessive in those cases in which it is proper and that the denial of bail in certain cases is permissible.[5] (See Mitchell, *Bail Reform and the Constitutionality of Pretrial Detention* (1969) 55 Va.L.Rev. 1223.)

■ Our constitutional language expressly providing that all persons shall be bailable except for a capital offense was consciously *added* to the "no excessive bail" language adopted from the Eighth Amendment in

---

[4]The court specifically rested its interpretation of the Eighth Amendment on the common law, stating: "The bail clause was lifted with slight changes from the English Bill of Rights Act. In England that clause has never been thought to accord a right to bail in all cases, but merely to provide that bail shall not be excessive in those cases where it is proper to grant bail. When this clause was carried over into our Bill of Rights, nothing was said that indicated any different concept. The Eighth Amendment has not prevented Congress from defining the classes of cases in which bail shall be allowed in this country. Thus in criminal cases bail is not compulsory where the punishment may be death. Indeed, the very language of the Amendment fails to say all arrests must be bailable." (342 U.S. at pp. 545-546 [96 L.Ed. at p. 563].)

[5]In recognition of the court's interpretation of the Eighth Amendment, Congress has enacted an elaborate plan of preventive detention which is presently being implemented in the District of Columbia. The District of Columbia Court Reform and Criminal Procedure Act of 1970 (Pub. L. No. 91-358 (July 29, 1970), 84 Stat. 473) defines specific categories of defendants who are subject to pretrial detention, where release conditions will not adequately protect the public safety.

Severe criticism has been leveled at the preventive detention concept. The major obstacles of a preventive detention system are the lack of ability to predict a detained person's future conduct (see Portman, *To Detain or Not to Detain?—A Review of the Background, Current Proposals, and Debate on Preventive Detention* (1970) 10 Santa Clara Law. 224, 250), and the realization that the detention is treated as a factual determination of a detainee's guilt (see Hickey, *Preventive Detention and the Crime of Being Dangerous* (1969) 58 Geo.L.J. 287, 297).

Preventive detention has also been studied by the American Bar Association Project on Minimum Standards for Criminal Justice. A model provision on pretrial detention was seriously considered but finally rejected. The provision suggested that all persons accused of crime be entitled to release, except those in cases in which the prosecution alleges that there is a high degree of risk of flight or future crimes of violence. As to such persons the prosecution would be required to apply to a court of general jurisdiction for a detention order and to prove by clear and convincing evidence the need for detention. The reasons assigned for the decision not to adopt a model preventive detention provision were the lack of information as to the true need for preventive detention and uncertainty of the predictive techniques necessary to operate the system with tolerable accuracy, as well as substantial, unresolved constitutional problems. (See A.B.A. Project on Min. Standards for Crim. Justice, Standards Relating to Pretrial Release (Approved Draft, 1968) p. 83.)

order to make clear that, unlike the federal rule, all except the one class of defendants were to be bailable.[6] As pertinent statutory provisions may not be read to impose greater limits on the right to bail as guaranteed by the California Constitution, there is no validity in the argument that there is an implied "public safety" exception in statutory or other provisions guaranteeing the right to bail and we hold that such an exception does not exist in view of the clear direction of article I, section 6. "If the constitutional guaranties are wrong, let the people change them—not judges or legislators." (*In re Keddy* (1951) 105 Cal.App.2d 215, 220 [233 P.2d 159].)[7]

We are compelled to the conclusion that the detention of persons dangerous to themselves or others is not contemplated within our criminal bail system, and if it becomes necessary to detain such persons, authorization therefor must be found elsewhere, either in existing or future provisions of the law.[8] No such provision had been invoked in the instant case at

[6]After the California Constitutional Convention of 1849 had accepted the provision prohibiting excessive bail, there was introduced what was then article I, section 7 (the text of which is the same as the first sentence of the present article I, section 6, guaranteeing the right to bail in all but capital cases) with the following explanation of the reasons for proposing the modification expressly providing for bail: "It has been thought by some that the section which we have just adopted covers the entire ground; but in my opinion it does not. This section is part of the common law, and as we have not adopted the common law, and perhaps may not, I think it very necessary that such a section should be introduced, so that in all cases, except capital offenses . . . the party accused shall be entitled to bail. An innocent man may be kept in prison and refused bail, without such a provision as this." (Report of the Debates in the Convention of Cal. on the Formation of the State Const., Sept. 28, 1849, at p. 293.) This section was reenacted into the 1879 Constitution without debate.

[7]In addressing a problem similar to that presented in the instant case it is stated in *Keddy:* "The people of the State of California through their Constitution have provided in article I, section 6, that '*all persons* shall be bailable by sufficient sureties, unless for capital offenses. . . .' [¶] This mandate of the people cannot be legally set aside by the civil, legislative or judicial branch of the government. It will be observed that the people, who are sovereign, have seen fit to provide that with but one exception, to wit, where a person has been charged with a capital offense, *all persons* are entitled to bail as a matter of right. Irrespective of the villainy of the accused or the heinousness of his offense, without regard for public opinion, or for the personal views of an individual officer as to the wisdom of the constitutional provision, such provision is binding without qualification upon the courts until the people have by inherited processes legally erased the constitutional mandate. . . . [¶] If the constitutional guaranties are wrong, let the people change them—not judges or legislators." (*In re Keddy* (1951) *supra*, 105 Cal.App.2d 215, 219-220.)

[8]The process of civil commitment of individuals is well recognized by both statute and case law. For example, a person of the age of 18 years or younger may be adjudged a ward of the juvenile court and detained until the execution of an order of commitment or other disposition has been made of his case. (Welf. & Inst. Code, § 737.) A person who is addicted or is in imminent danger of becoming addicted

the time the motion for release on bail was denied.[9]

In view of the foregoing it is clear that the Constitution of California prohibits the denial of bail solely because of petitioner's dangerous propensities. However, other circumstances not of record may preclude petitioner's release at this time and we cannot now order his discharge on the posting of reasonable bail to be fixed by the court.

Let the writ issue ordering that, while petitioner remains in custody pending a determination of the charges against him and upon his application therefor, he be afforded a hearing at which a reasonable bail be fixed, and that he be released upon the posting of such bail if he is then not subject to any other lawful restraints.

McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Roth, J.,* concurred.

**BURKE, J.**—I dissent. The words of our Constitution (art. I, § 6) are reasonably susceptible to the interpretation that, although there exists a

to narcotics may be detained for treatment and rehabilitation. (Welf. & Inst. Code, § 3100.) Further, if, as a result of inebriation, a person is a danger to himself or others or is gravely disabled, he may be taken into "civil protective custody" and placed in an evaluation and treatment facility for a 72-hour period. (Welf. & Inst. Code, § 5170; see also *Evans* v. *Municipal Court* (1962) 207 Cal.App.2d 633 [24 Cal.Rptr. 633].) If, while under observation for alcoholism, the person threatened or attempted to take his life, he may be confined for further intensive treatment. (See Welf. & Inst. Code, § 5260.) A ward of the California Youth Authority may be confined for a period beyond the date on which release would be otherwise mandatory upon a finding that he is a person who would be physically dangerous to the public due to his mental or physical deficiency, disorder or abnormality. (Welf. & Inst. Code, §§ 1800-1803; *In re Gary W.* (1971) 5 Cal.3d 296 [96 Cal.Rptr. 1, 486 P.2d 1201].) Finally, section 5150 provides that a person may be detained for a period of 72 hours if, as a result of a mental disorder, he presents a danger to himself or others. If further detention is required the person may be certified for intensive treatment for a period not to exceed 14 days. (§ 5250.) Additional confinement is available for a 90-day period if, at the expiration of the 14 days, such person "[h]ad attempted or inflicted harm upon the person of another, that act having resulted in his being taken into custody and [such person] presents, as a result of mental disorder, an imminent threat of substantial physical harm to others." (§ 5300, subd. (b).) A defendant committed under the provisions of the Welfare and Institutions Code may request a jury trial at the time of certification for intensive treatment. (§ 5303.) He also has a right to appointed counsel (§ 5302) and he retains both his personal (§ 5325) and civil (§ 5327) rights. The commitment procedures may be attacked by means of a writ of habeas corpus. (See § 5275.)

[9]We cannot and do not purport to judge whether, in the instant case, proper authorities should have initiated any particular civil commitment proceedings against petitioner. We take judicial notice of the fact, however, that criminal proceedings have now been suspended following a determination of petitioner's insanity and commitment to the Department of Mental Hygiene. (Pen. Code, § 1368 et seq.)

*Assigned by the Chairman of the Judicial Council.

general right to bail in non-capital cases, nevertheless our courts possess the inherent power to deny bail, or to impose reasonable conditions upon the grant thereof, in any case wherein defendant poses a substantial risk of harm to others or to himself. The instant case presents a striking example of the propriety and necessity of the foregoing interpretation of the bail provisions of our state Constitution.

Defendant was originally arrested for possessing two sawed-off shotguns and live shotgun shells. He exercised his constitutional right to bail and was released on bail of $500. Immediately thereafter, according to the People, defendant set about to kill the police officers who had arrested and booked him by mailing to those officers a package containing a live pipe bomb capable of causing severe injury or death. Defendant is presently charged with various offenses, including attempted murder. Must he be released on bail once more? I believe not.

First I would hold that defendant (regardless of his present dangerousness), by committing a serious crime while enjoying the freedom secured by bail, thereby forfeited any further right to bail, at least with respect to the crime (or crimes) so committed. Certainly the California Constitution was not intended to render the courts powerless to control and punish the misuse or abuse of their own process. Any other rule would seemingly permit a defendant, bent on obstructing justice, harassing witnesses, or causing mischief or mayhem, to make repeated applications for, and receive, bail following successive unlawful criminal acts, until his ultimate purpose is finally accomplished. In the hands of persons such as defendant herein, the right to bail would itself become an instrument of crime, a sword and not a shield. Therefore, I am persuaded that our courts properly may refuse bail to one who has demonstrated his unwillingness to fulfill the condition, necessarily implicit within the grant of bail, that he remain on good behavior pending trial. (See *Rendel* v. *Mummert* (1970) 106 Ariz. 233 [474 P.2d 824]; 8 Am.Jur.2d, Bail and Recognizance, §§ 25, 26.)

But even had defendant not been on bail when he committed the alleged offenses at issue, I believe the California Constitution would permit the courts to exercise some degree of discretion to refuse bail to one whose conduct threatens substantial harm to others or to himself.[1] The majority

---

[1] The majority suggest that the provisions of the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.) might afford adequate protection to society from a dangerous person such as defendant. Yet, the provisions of the act might require more than simply a showing of dangerousness, namely, some mental or physical deficiency, disorder or abnormality. The act seemingly would be inapplicable to the cold-blooded, professional criminal, and yet it is precisely such an individual who poses the greatest threat of harm.

explain that both at common law, and under the Eighth Amendment to the United States Constitution, denial of bail in certain noncapital cases was and is permissible. (See *Carlson* v. *Landon,* 342 U.S. 524 [96 L.Ed. 547, 72 S.Ct. 525].) Accordingly, in jurisdictions governed by constitutional provisions incorporating the language of the Eighth Amendment, denial of bail may be premised upon the necessity to provide for the welfare and safety of the community. (See, e.g., *People* v. *Melville,* 62 Misc.2d 366 [308 N.Y.S.2d 671, 677-680]; Mitchell, *Bail Reform and the Constitutionality of Pretrial Detention,* 55 Va.L.Rev. 1223.)

Unlike the language of the Eighth Amendment, that excessive bail shall not be required, the California Constitution also contains a provision that "All persons shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or the presumption great. . . ." (Art. I, § 6.) Yet, that provision is reasonably susceptible to the interpretation that all persons are entitled to be considered for bail without regard to the type of offense committed (e.g., rape, mayhem, arson, etc., with the exception noted). In other words, the California provision might have been intended as insuring that the courts will not routinely deny bail whenever a particular class of offenses is charged, without regard to the particular defendant's suitability for bail. Under such an interpretation, the courts would retain a degree of discretion to deny bail when necessary to promote the public safety and welfare.[2]

Moreover, even if we assume arguendo that a constitutional right to bail exists, it is noteworthy that the framers of our state Constitution also recognized the "inalienable right" of all men to enjoy and defend their life and liberty, to protect their property, and to pursue *and obtain* safety and happiness. (Cal. Const., art. I, § 1.) The constitutional provisions concerning bail have no greater standing or priority than the one just referred to— the two must be read together. The necessary implication in doing so is that the courts must retain the inherent power to achieve a suitable balance between society's right of defense, protection and safety, and defendant's own right to bail.

Thus, courts in other jurisdictions having constitutional provisions substantially identical to those in California, have held that in spite of those

---

[2]The majority refer to certain contrary statements made during the constitutional debates of 1849, but we are concerned with the intentions of those who adopted the *1879* Constitution, not its predecessor. Moreover, apart from the acknowledged shortcomings of reliance upon debates as a key to constitutional construction (*People* v. *McCreery,* 34 Cal. 432), the 1849 debates do not relate to the propriety of denying bail for the protection of society.

provisions, the right to bail is not absolute, and the courts possess discretion to refuse bail, or to attach conditions to the grant of bail, in an appropriate case. (See, e.g., *Rendel* v. *Mummert, supra,* 474 P.2d 824, 827-830; *State* v. *Johnson* (1972) 61 N.J. 351 [294 A.2d 245, 252].) More importantly, the California courts have consistently acknowledged the foregoing principle. As stated in *Bean* v. *County of Los Angeles,* 252 Cal.App.2d 754, 757 [60 Cal.Rptr. 804], "A defendant in a criminal action is entitled to be released on bail as a matter of right except for a capital offense when the proof is evident or the presumption great (Cal. Const., art. I, § 6) *or where for the safety of the individual or for the protection of society it would be proper to deny bail.*" (Fn. omitted, italics added; see also *Evans* v. *Municipal Court,* 207 Cal.App.2d 633 [24 Cal.Rptr. 633]; *In re Gentry,* 206 Cal.App.2d 723 [24 Cal.Rptr. 208]; *In re Keddy,* 105 Cal.App.2d 215 [233 P.2d 159]; *In re Westcott,* 93 Cal.App. 575 [270 P. 247]; *In re Henley,* 18 Cal.App. 1 [121 P. 933].)

I would adopt the foregoing rule, for I believe it properly takes into account not only the constitutional rights of the defendant but also the constitutional rights of society, which are given equal, if not preferred, status under our Constitution. Of course, under that rule, no man accused of a noncapital offense could be denied bail solely on the basis of some insubstantial possibility of doing future harm. "Denial of bail because of the dangerous potential of a defendant if let at large in the community should only be imposed in rare and extraordinary cases. In those cases the evidence must be clear and convincing, the peril must be apparent." (*People* v. *Melville, supra,* 308 N.Y.S.2d 671, 680 [denial of bail to defendant accused of *bombing* occupied dwelling].) The trial court, in denying bail, must find that a substantial risk of harm exists, that no reasonable alternative (such as imposing protective conditions to the grant of bail) exists, and that there is a substantial likelihood that defendant in fact committed the offense of which he stands accused. Finally, denial of bail is not wholly unreviewable but may be challenged in the appellate courts as an improper abuse of discretion. Therefore, I would conclude that ample safeguards exist to guarantee the right of bail in all proper cases.

The often heard solution that the necessary protection to the public may be accorded by having the judge fix an amount of bail which the particular defendant would be unable to furnish merely evades the issue and does indirectly what it is argued may not be done directly. Furthermore, doing so would violate the prohibition against excessive bail.

Justice Douglas, denying bail on appeal in *Carbo* v. *United States,* 7

L.Ed.2d 769, 774 [82 S.Ct. 662, 666], remarked that "If, for example, the safety of the community would be jeopardized, it would be *irresponsible judicial action* to grant bail." (Fn. omitted, italics added.) I strongly believe that our Constitution affords a firm basis for similarly denying bail in the instant case.