OPINION OF THE COURT
Benjamin Altman, J.
The defendant requests reduced bail or release on recognizance. She raises an interesting argument against the bail *114 set in her case: she alleges that bail was set beyond the means of the defendant to pay, thus imposing preventive detention.
The facts of the situation are as follows.
On April 19, 1978, the defendant was arrested and charged with assault in the second degree, a felony (Penal Law, § 120.05), assault in the third degree, a misdemeanor (Penal Law, § 120.00), as well as resisting arrest, a misdemeanor (Penal Law, § 205.30). On April 20, 1978, the defendant appeared before the court in the night arraignment part.
The People requested bail of $500. The defense counsel argued that since the felony charge would in all probability be reduced to a misdemeanor, the defendant should be released in her own recognizance.
The court took note of the fact that the defendant had been arrested seven times in the past two months and had a bench warrant issued concerning court proceedings on those arrests. Thereupon the court fixed bail in the sum of $500 bail bond or cash.
The defense counsel stated that the defendant could not raise any cash bail or get a bond. Counsel alleged that this court’s ruling as to his client’s bail was tantamount to preventive detention and illegal under the statutes of New York. The defense counsel made the general accusation that the practice is widespread among the judiciary of ordering, sub rosa, preventive detention by fixing bail beyond the means of the defendant or his family.
There exists ample case law to reflect the basic policy as to bail.
The policy of the law favors bail for two reasons. First, there is the presumption that the prisoner is innocent (People ex rel. Lobell v McDonnell, 296 NY 109). Also, the policy of law favors release of the defendant pending determination of his guilt or innocence and justifies his detention before conviction only if some legitimate purpose of the criminal process requires it (People v Terrell, 62 Misc 2d 673).
The court, in determining the amount of bail to be required, has large discretion, but such discretion is not totally unfettered (People ex rel. Lobell v McDonnell, supra; People ex rel. La Force v Skinner, 65 Misc 2d 884).
Sound discretion and judgment of the court, depending on the circumstances of the case, are other concepts to be used in fixing bail (People ex rel. Rothensies v Searles, 229 App Div *115 603). Normally, the amount of bail to be required of a prisoner must be no more than is necessary to guarantee his presence at the trial. The reasonableness of the amount is to be determined, under the circumstances surrounding each particular prisoner, by properly striking a balance between the need for a tie to the jurisdiction and the right to freedom from unnecessary restraint before conviction (People ex rel. Lobell v McDonnell, supra).
 In determining how much bail an accused should be required to give, there is a latitude between a figure which is clearly inadequate and one which is clearly excessive (United States v Weiss, 233 F2d 463). Along with these concepts, we have a statutory framework as to bail. The two statutes relevant to this case are CPL 510.20 and 510.30.
CPL 510.20 states:
"1. Upon any occasion when a court is required to issue a securing order with respect to a principal, or at any time when a principal is confined in the custody of the sheriff as a result of a previously issued securing order, he may make an application for recognizance or bail.
"2. Upon such application, the principal must be accorded an opportunity to be heard and to contend that an order of recognizance or bail must or should issue, that the court should release him on his own recognizance rather than fix bail, and that if bail is fixed it should be in a suggested amount and form.”
CPL 510.30 (subd 2) states:
"2. To the extent that the issuance of an order of recognizance or bail and the terms thereof are matters of discretion rather than of law, an application is determined on the basis of the following factors and criteria.
"(a) With respect to any principal, the court must consider the kind and degree of control or restriction that is necessary to secure his court attendance when required. In determining that matter, the court must, on the basis of available information, consider and take into account:
"(i) The principal’s character, reputation, habits and mental condition;
"(ii) His employment and financial resources; and "(iii) His family ties and the length of his residence if any in the community; and "(iv) His criminal record if any; and
*116 "(v) His record of previous adjudication as a juvenile delinquent or a youthful offender, if any; and
"(vi) His previous record if any in responding to court appearances when required or with respect to flight to avoid criminal prosecution; and
"(vii) If he is a defendant, the weight of the evidence against him in the pending criminal action and any other factor indicating probability or improbability of conviction; or, in the case of an application for bail or recognizance pending appeal, the merit or lack of merit of the appeal; and
"(viii) If he is a defendant, the sentence which may be or has been imposed upon conviction.”
Even with the presence of a statutory framework and case law, the issue of bail or release is one of the most troublesome topics and issues with which Judges must grapple. The statutory structure as to bail is quite clear in that requiring the defendant’s appearance is the major consideration in fixing the amount of bail. Danger to the community does not appear to be the primary concern of the bail structure (but see People v Melville, an opinion by my colleague, Judge Irving Lang, 62 Misc 2d 366, which held that under certain extraordinary circumstances the danger to the community is to be considered in fixing bail of remanding the defendant). Repeatedly defense counsel state that the courts are concerned with more than the appearance of the defendant at the adjourned date; they continually stress the courts’ concern with danger to the community and the use of persistent arrests (as in this case) as standards for setting bail.
Along those lines the Practice Commentary (by Richard Denzer), following CPL 510.30 (McKinney’s Cons Laws of NY, Book 11 A, CPL, pp 15-16) presents some interesting thoughts. It states that CPL 510.30
"postulates the issue for determination upon the ordinary application for bail or recognizance as being the familiar question of how much and what kind of control over the principal [usually an as yet unconvicted defendant] is necessary in order to secure his court appearance when required * * * This honors a traditional and long accepted doctrine that securing the defendant’s attendance is the only purpose of ñxing bail * * *
"In that connection, it is interesting to note * * * that a growing faction disagrees with that principle and maintains *117 that the possibility of the defendant being in [sic] danger to society if at liberty during the pendency of the action is also a prime factor to be considered by the court in making the bail or securing order determination; and, second, that this concept —known as 'preventive detention’ — was included in the ñrst proposal of the CPL submitted to the Legislature (Proposed New York Criminal Procedure Law [1969 bill, West Pub. Co. edition] § 510.30 [2-b]) * * * [T]his highly controversial subject was ultimately resolved by legislative disapproval and deletion of the proposal’s preventive detention provision.” (Emphasis added.)
Presently "preventive detention” serves as a boogeyman conjured up by defense counsel when bail is deemed excessive; yet the concept may be close to becoming a viable part of our bail, recognizance, and commitment system as it exists under CPL articles 500 to 540.
It would be fruitful, at this time, to examine a recent extensive report of the National Association of Pretrial Services Agencies,* ably directed by the former president, Bruce Beaudin, with the assistance of many other talented individuals. In broad strokes the report recommends that (a) money bail be eliminated entirely, and (b) under certain circumstances preventive detention should be available to the Judge.
As to the elimination of money bail, the report tells us in part that (p 52) "Development of alternative forms of nonfinancial release ranging from field citations to highly restrictive forms of supervised release be provided the courts with a sufficient array of nonfinancial release mechanisms to address the needs and risks posed by all defendants.” The report further states (p 53): "the adoption of totally nonfinancial release systems in place of money bail increases the equity with which pretrial release is administered, increases accountability of the pretrial release system and brings pretrial release considerations more directly in line with the expressed purposes of bail.” Until the use of financial conditions is statutorily prohibited, the use of money in the form of cash deposit with the court will probably continue to be used when available nonfinancial conditions are not deemed adequate to assure the defendant’s appearance in court.
As to preventive detention, the gravamen of the pretrial or *118 preventive detention provision in the report tells us that if the court finds that no condition(s) of release will reasonably minimize risk of flight to avoid prosecution or risk of danger to the community, it may order the defendant detained prior to trial.
The report sets forth requirements for detention and prevention (pp 75-77). In order to invoke these pretrial detention provisions, a court should find that there is substantial probability that the defendant committed the offense charged.
Also the court must find that where the defendant is charged with a felony, there is clear and convincing evidence that: (a) there is a substantial risk of flight to avoid prosecution; (b) the defendant has been convicted of, or has a pending charge of, unlawful flight to avoid prosecution; or (c) the defendant has expressed intent to flee the jurisdiction; or (d) the defendant has committed overt acts which reasonably infer an intent to flee the jurisdiction; and (e) there is no condition or combination of conditions of release which will reasonably minimize the substantial risk of flight.
Another situation is brought out by the report. If the defendant has been charged with a violent crime and poses a substantial threat to the safety of the community, the report asks the court to consider the following before detaining the defendant prior to trial: (1) Has the defendant been convicted of a crime of violence within the past ten years? (2) Is the defendant on probation, parole or pretrial release for a crime of violence; or (3) Has the defendant exhibited a pattern of behavior consisting of present and past conduct which, although not necessarily the subject of criminal prosecution and/or conviction, poses a substantial threat to the safety of the community?
Again the court in conjunction with the above, must consider whether there exists a condition or a combination of conditions of release which will reasonably minimize the substantial risk of danger to the community.
Also, the report indicates that the court should consider whether the defendant poses a threat to the integrity of the judicial process by threatening or intimidating witnesses or jurors, or by concealing or destroying evidence, with no condition of release which would reasonably minimize the threat.
The report also goes into specific procedures that should be followed during a hearing before detention prior to trial may be ordered.
*119 It must be noted that the only jurisdiction in this country which has preventive detention is Washington, D.C. Its operation has been extensively criticized.
In the view of many, any bail that cannot be met leads to preventive detention. This court sets bail in accordance with the procedures of the Criminal Procedure Law with the concern for the appearance of the defendant for future proceedings. This court is not recommending the report. Many changes have occurred, however, since the enactment of CPL 510.20 and 510.30 (L 1970, ch 996) and since my membership on the Penal Law Revision Committee of the New York State Legislature. The newspapers and the evening news are full of accounts of persons out on bail for one offense, committing, or allegedly committing, other offenses. Bench warrants are being issued and bail is being "jumped” in record numbers. Perhaps my former colleagues in the Legislature should reexamine the bail and release provisions, using the NAPSA report as a basis for a close reappraisal of our present system. In the specific issue before this court, the defendant has no basis for alleging that she was placed in preventive detention.
People v Hutchinson (360 F2d 759) presents a case of similar offenses and with a similar bail set. There, the defendants, civil rights demonstrators in Syracuse, had been charged with disorderly conduct, public nuisance, and assault in the second degree. The bails set ranged from $500 to $5,500. The defendants claimed that the bail was too high and punitive. The Court of Appeals held that the bail set was valid, and the action by the local court as to bail was a proper exercise of discretion.
Thus, judging by the offenses charged here and the bail set, this court acted appropriately as to the determination of the bail. Considering the situation in the totality of the circumstances, the court finds that holding the defendant in $500 bond or cash bail was a proper and appropriate exercise of discretion by this court.
The request for bail reduction or release on recognizance is denied.

 The report is entitled "Performance Standards and Goals for Release and Diversion.”