OPINION OF THE COURT
Martin Evans, J.
On this motion by the People to revoke bail, the court ordered a hearing to determine the facts. The hearing was held on October 22, 1981. Defendant, previously charged with a misdemeanor, had been at liberty. While at liberty, a few weeks after the incident which led to the misdemeanor charge, he threatened the life of one of the witnesses in the misdemeanor case, and continued those *146 threats, the last one being made on the evening before this hearing.
On September 2, 1981 and on two later occasions, the defendant, through the father of another witness to the first crime, one Aníbal Castro, threatened harm to Aníbal if the misdemeanor case was not dropped.
Subsequently, on September 9, 1981, the defendant, possibly carrying out his threat, stabbed Aníbal Castro. Rearrested for this assault, bail was fixed in the amount of $10,000. Bail was posted and the defendant was released. An indictment was filed on October 7,1981 for the felony of attempted murder, but no change in bail conditions was made upon arraignment in the Supreme Court. Neither at the time of the bail hearing nor at the arraignment upon the indictment was the court apprised of the underlying misdemeanor charge, nor of the relationship between that charge and the felony.
This bail revocation hearing presents a question of first impression: What is the effect of the recent statutory amendments to CPL 510.30 and 530.60 on the court’s existing powers to re-evaluate and, if necessary, revoke a prior order fixing bail?
Prior to its amendment earlier this year (L 1981, ch 788, § 2), CPL 530.60 read as follows: “Whenever in the course of a criminal action or proceeding a defendant is at liberty as a result of an order of recognizance or bail issued pursuant to this article, and the court considers it necessary to review such order, it may, and by a bench warrant if necessary, require the defendant to appear before the court. Upon such appearance, the court, for good cause shown, may revoke the order of recognizance or bail. If the" defendant is entitled to recognizance or bail as a matter of right, the court must issue another such order. If he is not, the court may either issue such an order or commit the defendant to the custody of the sheriff.”
The recent amendment added a new subdivision 2 to CPL 530.60, which provides that a court may revoke bail or recognizance of a defendant already charged with a felony, where there is shown reasonable cause to believe that, while at liberty on the prior charge, the defendant commit *147 ted a class A or a violent felony. The subdivision also requires a hearing for revocation motions pursuant to the new provision and limits the duration of an order of revocation under the new provision.
Although the People initially grounded their application for revocation in part on the new provision, it is clear that it is inapplicable to the case at bar. Whether through inadvert anee or intention, the Legislature expressly limited its application to cases where the original charge, on which the defendant had been permitted to be at liberty, was a felony. It is conceded that the defendant here was charged, and remains charged, with a misdemeanor. Whether, as the People contend, that charge was initially drawn at felony grade by the police upon arrest, or whether it could or even will be presented to the Grand Jury so as to belatedly elevate it to a felony, is of no moment here.
Defendant, however, contends that the intent and effect of the amendment was to abrogate the prior statutory and common-law powers of the court, and to limit revocation to the specific, narrow situation envisioned by the new subdivision. The defendant is incorrect; the statute’s clear wording and legislative intent indicates the contrary. (See NY Assembly, Memorandum in Support of Legislation, Bill No. 5882 [1981].) The amendment, at least in conceptual terms, expands the court’s powers, although in practical terms its effect may actually be smaller than anticipated.
It has long been settled law that an order releasing a defendant on bail or recognizance is conditional, dynamic and ambulatory. (People ex rel. Manceri v Doherty, 192 NYS2d 140.) Just as the initial determination to set bail in a particular amount, to remand, or to release without security must have a reasonable basis, and is reviewable, so must a decision to revoke. (See People ex rel, Ortiz v Commissioner of Corrections of City of N. Y., 76 AD2d 818; United States ex rel. Diller v Greco, 426 F Supp 375.) Thus, new evidence, or additional circumstances not presented to the court upon the making of its initial bail determination, is a sufficient predicate for a court, indeed, even for a Judge of co-ordinate jurisdiction, to entertain an application for a superseding order altering the defendant’s bail status. *148 (CPL 530.60, subd 1; People v Gruttola, 72 Misc 2d 295.) The court, in reviewing bail, must consider such new evidence (i.e., additional or changed circumstances) in the light of the same principles governing the initial decision to grant bail, including the statutorily mandated bail criteria of CPL 510.30. (People ex rel. La Force u Skinner, 65 Misc 2d 884.) Thus, if such evidence, had it been presented to the court at the first instance, would have caused that court to fix bail at a higher amount, or even remand the defendant without bail, the reviewing court is empowered to upwardly modify or revoke bail. It is, by definition, “good cause” under the statute. “Good cause”, however, is not synonymous with such new information. Rather, it is much more broad, encompassing any substantial reason why bail should be revoked, or not have been granted including, for example, the defendant’s interference with, or frustration of justice. (People ex rel. Bird v Behagen, 65 Misc 2d 733.)
A threat made by a defendant to a witness, after the fixation of bail, is sufficient to warrant a decision revoking bail. (.People v Gruttola, supra.) The evidence adduced at the hearing herein, which the court credits as true, clearly and convincingly indicates that the defendant threatened and otherwise attempted to tamper with witnesses prior to the initial bail proceeding. Nevertheless, this information was not known to the People, and thus not made known to the court, at the time of the initial bail determination. It would thus be a sufficient basis for reconsidering and revoking the defendant’s parole status.
Although there is no constitutional right to bail, and a court is not obligated to release a defendant on bail (Carlson v Landon, 342 US 524, 545; Shapiro v Keeper of City Prison, 290 NY 393) when a court does set bail it cannot be set in an unreasonably high amount, and must not be set as a punitive measure. (US Const, 8th Arndt.) Bail has historically been considered as a security device, the purpose of which is to guarantee the presence of the defendant at trial. (See 4 Blackstone’s Comm, ch 22; Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 510.30, p 15.)
*149 Before determining the appropriate amount of bail, a court must first determine whether or not bail should be fixed, i.e., whether the defendant should be permitted to remain at liberty under any circumstances. Both of these decisions are within the sound discretion of the Judge before whom the bail application is made. (People ex rel. Lobell v McDonnell, 296 NY 109.)
Since bail is a security device, it must be fixed only in an amount that is both sufficient and necessary to guarantee the defendant’s appearance. Other factors, such as the defendant’s potential danger to the community, are not relevant to this issue and cannot be properly considered in fixing the amount of bail. Such factors may, however, be relevant to the court’s threshold determination, whether or not any bail should be set at all. “If a defendant would present a clear and present danger if free in the community then it would not matter whether he had posted $100,000 bail or was released on his own recognizance. Danger to the community has no relationship to the ability of a defendant to post a bond. Therefore, if a court determines that a defendant would be a threat if released prior to trial its duty is to remand him rather than set an extremely high bail.” (People v Melville, 62 Misc 2d 366, 373-374 [Lang, J.].) In Melville, the court remanded the defendant without bail finding good cause based on “extraordinary” evidence of danger to the community including his involvement in multiple bombings. The Court of Appeals also recognized the appropriateness of denying bail in cases of witness tampering. (People ex rel. Klein v Krueger, 25 NY2d 497.) Therefore, where, as here, substantial evidence that the defendant, if allowed to remain at liberty, presents a substantial danger to the administration of justice, bail previously set can and should be revoked. (Cf. American Bar Association, Minimum Standards for Criminal Justice [2d ed], Pretrial Release, Commentary, § 10-5.1.)
The statutory criteria which the court must consider in determining bail status include (CPL 510.30, subd 2):
1. Character, reputation, habits and mental condition.
2. Employment status and financial resources.
3. Family ties and length of residence, if any, in the community.
*150 4. Criminal record, if any, including record of previous adjudication as a juvenile delinquent.
5. Previous record, if any, in responding to court appearances when required or with respect to flight to avoid criminal prosecution.
6. The weight of the evidence against him in the pending criminal action and any other factor indicating probability or improbability of conviction.
7. The sentence which may be imposed upon conviction.
These factors are not a catechism or checklist which make the Judge’s role ministerial. On the contrary, they are objective indicia of responsibility which, if favorable, generally correlate with a likelihood that the defendant will reappear in court. Upon analysis, it is no surprise that the seriousness of a crime and the weight of the evidence were always considered significant in determining whether or not bail should be granted. (4 Blackstone’s Comm, ch 22.) The same logic applies with even greater force where a defendant is yet again arrested. A new arrest may, in many, if not most cases, indicate irresponsibility. The underlying evidence may show that the court’s initial appraisal of his character, reputation or habits was erroneous. It may be an indication of unstable mental condition. It may, by casting him in a different light, cause a reassessment of the weight of evidence against him in the pending case, and thus may ultimately make a greater sentence more likely. In short, in most cases, rearrest for a serious crime, supported by reasonable cause to believe that he committed that crime, amounts to evidence of both dangerousness to the community and a greater likelihood of flight. It would thus be a sufficient basis for reconsideration of the initial decision to grant bail, and depending on the circumstances, it may well constitute good cause for revocation.
A subsequent arrest by itself, however, without evidence of the underlying crime, has never per se constituted good cause for revocation of bail. The new amendment plainly does not repeal the existing power to revoke bail for good cause, which indeed is inherent in the court. (See People ex rel. Manceri u Doherty, 192 NYS2d 140, supra.) As an *151 inherent power, it cannot be legislatively limited. (See People ex rel. Decker v Page, 125 Misc 538; Matter of People v Little, 89 Misc 2d 742; 14 Am Jur, Courts, § 171.) Rather, it was intended to expand a court’s power to revoke bail in a limited class of cases solely because of the probability that defendant has committed a felony, even if there is no reasonable correlation between the fact of the new arrest and the criteria of CPL 510.30, even if it does not appreciably change the court’s view of the likelihood of future appearance, and even if it does not, for any other reason, constitute “good cause” for revocation.
The amendment at issue was adopted following a long and difficult period of debate over the merits of shifting to a system of pretrial “preventive detention”. There has been a growing belief, over the past two decades, that a defendant’s potential dangerousness should be a factor — indeed, some would suggest, the primary factor — the court should consider in determining whether or not a defendant should be admitted to bail. When the Legislature recodified the criminal laws in the 1960’s, it was suggested that such a concept be included in the new Criminal Procedure Law. Although it was not, more recent history shows that the concept has never been completely rejected. For example, bail may not be ordered by a city court if the defendant is charged with a class A felony, or even while charged with any felony, if it appears that he has had two prior felony convictions (CPL 530.20). The new section adopted last year was largely motivated by this concept.
The new section adopted last year was also motivated by the concept that potential harm to the community, and not only the possibility of flight, should influence the initial decision to permit pretrial release. Several highly publicized cases dramatized the societal problem posed by a defendant at liberty on a serious charge, rearrested for a violent crime, and then continued on bail because flight was regarded as unlikely and good cause for a changed status was otherwise viewed as absent. Indeed, approximately 12% of defendants arrested on felony charges in New York County in 1980 were already awaiting trial on a prior felony charge. (NY Assembly, Memorandum in Support of Legislation, Assembly Bill No. 5882 [1981].)
*152 The change represents a cautious, self-limiting compromise. While retaining the traditional system and judicial power as declared by the existing statute, it added an additional, albeit narrow, circumstance for revocation based on a different concept, new to our system. Rearrest can now automatically trigger the discretionary power to revoke bail or parole. Because it marks a departure from traditional practice and because it is so potentially subject to abuse, it was expressly limited to only those cases where one already charged with a serious crime is rearrested for another. Moreover, as an added protection, an evidentiary hearing was mandated, at which by competent, admissible evidence, the People would demonstrate reasonable cause to believe that the defendant actually committed the crime charged in the subsequent arrest. Where, as here, the application for revocation is not based on the new section, its procedural requirements, including a formal evidentiary hearing, are not required. Nevertheless, adequate proof should be presented to the court on any application to revoke bail. A formal hearing is not required on the initial application for the fixing of bail, usually at the arraignment, and is thus not required for revocation, but there must be a sufficiently articulated basis for the court’s determination, in order to guarantee the defendant’s due process rights. A hearing, which can afford the defendant the opportunity to present evidence and cross-examine the People’s witnesses, is preferable. (See United States ex rel. Diller v Greco, 426 F Supp 375, 379-380, supra.)
The Legislature also amended CPL 510.30 to add a new subdivision 3, which provides as follows: “When bail or recognizance is ordered, the court shall inform the principal, if he is a defendant charged with the commission of a felony, that the release is conditional and that the court may revoke the order of release and commit the principal to the custody of the sheriff in accordance with the provisions of subdivision two of section 530.60 of this chapter if he commits a subsequent felony while at liberty upon such order.”
This subdivision is also, by its terms, inapplicable here, since the underlying charge is not a felony. Indeed, even if that charge were a felony, it would not prevent *153 revocation if good cause is shown under CPL 530.60 (subd 1) (i.e., likelihood of flight, interference with the processes of justice, or any other reason viewed as sufficient prior to the adoption of the new amendment). Whether failure to give a defendant such notice would be a jurisdictional defect preventing the court’s consideration of revocation under the new criterion (i.e., rearrest per se) is not now before the court. Nevertheless, it would appear that since a bail order is always conditional and ambulatory, the section is merely declarative of the pre-existing law. The notice provision appears only to be a warning of an additional penalty for future violations of law. In the absence of specific language providing that the court lacks power, pursuant to CPL 530.60 (subd 2) to re-examine bail status unless notice is given, it should not be concluded that it intended the notice to be a jurisdictional predicate. Had the Legislature intended otherwise, it would have so provided.
The court concludes that the People have met their burden of showing good cause for revocation. The threats, express and oblique, were calculated to frustrate the ability of the court to do justice. Had they been known initially, the defendant should not have been permitted to remain at liberty. The action responsible for the rearrest — the stabbing of complainant in the underlying case — was part of a pattern intended to prevent prosecution. However, it is also evidence of consciousness of guilt and thus substantially increases both the likelihood of conviction on the original charge, and the total potential and likely punishment. At best, it displays a rash, uncontrolled emotionality; at worst, it evinces a depraved act. It therefore shows the kind of irresponsibility which must be considered negatively under the “character, reputation and mental condition” category of the bail statute. In sum, the defendant’s conduct not only frustrates the interest of justice but indicates as well a heightened risk that he may flee.
The defendant is accordingly ordered remanded pending trial.