[No. D026379. Fourth Dist., Div. One. July 24, 1997.]

THE PEOPLE, Plaintiff and Appellant, v.
AMWEST SURETY INSURANCE COMPANY, Defendant and
Respondent.

916

**COUNSEL**

John J. Sansone, County Counsel, Diane Bardsley, Chief Deputy County Counsel, and Bruce D. MacLeish, Deputy County Counsel, for Plaintiff and Appellant.

Nunez & Bernstein and E. Alan Nunez for Defendant and Respondent.

**OPINION**

**HUFFMAN, J.**—The People appeal an order of the superior court granting the motion of defendant Amwest Surety Insurance Company (Amwest) to set

aside a summary judgment entered against it. (Pen. Code, § 1306.)[1] The summary judgment was entered after Amwest's motion to exonerate bond was denied and the bond forfeited because the trial court believed a sufficient excuse may have existed for a previous failure to appear in court of the defendant, Avina M. Martin, who was the subject of the Amwest bail bond, and who later failed to appear again, this time causing the forfeiture of the bond.

At the motion hearing before the presiding judge, Amwest argued the summary judgment should be set aside because the trial court lacked jurisdiction to forfeit the bond when Martin again failed to appear because it had declined to do so at the first failure to appear, based on a finding of sufficient excuse as mentioned above. We conclude the court hearing the motion in the presiding department erred in setting aside the summary judgment; on this record, the trial court acted well within the discretion granted to it by section 1305.1 to continue the case for a reasonable period of time to enable the defendant to appear without ordering a forfeiture of bail. We reverse the order and reinstate the summary judgment and costs order, with further proceedings to take place regarding a further statutory cost award. (§ 1305.3.)

### FACTUAL AND PROCEDURAL BACKGROUND

On October 12, 1994, Amwest posted a $100,000 bail bond for the release of Martin, a criminal defendant. The premium paid was $10,015. On December 8, 1994, Martin failed to appear for a court hearing. The reporter's transcript for that hearing shows that an attorney specially appearing for the attorney who represented Martin, who was not present, indicated to the court in chambers and in open court "that there may be an emergency Mr. Martin attended to, and he may be—Mr. Avina [sic], and he may be available tomorrow morning." The trial court inquired whether the prosecutor had any objection to holding the warrant until the next day; there was none. The court then continued the scheduled readiness conference until the next morning, and held a bench warrant and the forfeiture of the bond until the next morning.

At the continued hearing, Martin appeared and the bench warrant was rescinded. He remained at liberty on the existing bond and the trial date of January 20, 1995, was confirmed. Martin did not appear at trial, the bail bond was forfeited, and a bench warrant issued. The court issued a notice of forfeiture of the bond January 23, 1995.

On August 9, 1995, Amwest brought a motion in the trial court to exonerate the bond. This motion was denied, as the trial court ruled there

---

[1] All statutory references are to the Penal Code unless otherwise noted.

never was a forfeiture on December 8, 1994, because the court had had reason to believe there was sufficient excuse for the failure to appear, the forfeiture had been held, and the defendant duly appeared the next day. The court noted there was a sound public policy reason for interpreting the statute as allowing a continuance on such a showing because otherwise trial courts would have no alternatives to immediate forfeiture whenever a defendant was not present as scheduled, even when the defense attorney could make assurances, based on client contact and sufficient excuse, that the defendant would be present as required at a time certain. Four hundred dollars in costs was awarded the People under section 1305.3 for the expenses of opposing the motion to vacate. Summary judgment was then entered in the presiding department on the bail bond forfeiture on October 3, 1995. (§ 1306.)[2]

On January 12, 1996, Amwest noticed a motion in the presiding department to discharge the forfeiture, set aside the summary judgment and exonerate bail. Its argument was that the court lacked jurisdiction to enter summary judgment because the trial court lost jurisdiction over the bond when it declined to forfeit it at the first nonappearance, December 8, 1994, and the record was inadequate to support any conclusion that sufficient excuse had existed for the nonappearance. After taking the matter under submission, the presiding judge granted the motion and set the summary judgment aside, as shown in the augmented record. The People appeal.

DISCUSSION

I

*Standard of Review*

■ Where the evidence before the appellate court is not in dispute, the issue is one of law, in this case, statutory construction. The legal conclusions drawn by the trial court are not binding on appeal. (*People* v. *American Bankers Ins. Co.* (1992) 4 Cal.App.4th 348, 351 [5 Cal.Rptr.2d 620].)
■ In interpreting a statutory scheme, we apply these rules: "Our function is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citation.] To ascertain such intent, courts turn first to the words of the statute itself [citation], and seek to give the words employed by the Legislature their usual and ordinary meaning. [Citation.] When interpreting

---

[2]Entry of summary judgment in these circumstances is done pursuant to a contractual consent in the bond agreement to entry of judgment upon forfeiture, after notice and expiration of the 180-day statutory period. (§§ 1278, 1287, 1306, subd. (a); see 4 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Proceedings Before Trial, § 2026, pp. 2389-2391; *id.* (1997 pocket supp.) § 2026, pp. 95-96.)

statutory language, we may neither insert language which has been omitted nor ignore language which has been inserted. (Code Civ. Proc., § 1858.) The language must be construed in the context of the statutory framework as a whole, keeping in mind the policies and purposes of the statute [citation], and where possible the language should be read so as to conform to the spirit of the enactment. [Citation.]" (*Rudd* v. *California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 952 [268 Cal.Rptr. 624].)

Amwest contends that in addition to these rules, we should apply an abuse of discretion standard generally applicable to motions for relief from forfeiture, on the theory that the presiding judge must have had some good reason to relieve Amwest from the summary judgment. This argument is not well taken because the cases relied on, *People* v. *Wilcox* (1960) 53 Cal.2d 651, 656 [2 Cal.Rptr. 754, 349 P.2d 522], *People* v. *United Bonding Ins. Co.* (1970) 12 Cal.App.3d 349, 353 [90 Cal.Rptr. 714], and *People* v. *Allied Fidelity Ins. Co.* (1985) 168 Cal.App.3d 253, 257 [214 Cal.Rptr. 99], all deal with a different phase of the proceedings, specifically the statutory procedure for obtaining relief from forfeiture within 180 days after the notice of forfeiture by surrendering the defendant or showing specified types of permanent or temporary disability from being able to do so. (§ 1305, subds. (b)-(g); *People* v. *American Bankers Ins. Co.*, *supra*, 4 Cal.App.4th at p. 356.)

Here, in ruling on the motion to discharge the forfeiture, set aside the summary judgment and exonerate bail, the presiding judge was essentially deciding a jurisdictional question involving statutory interpretation, as we will next discuss. Thus, we do not have occasion to review the presiding judge's exercise of discretion, as only legal questions have been presented at both levels.[3]

---

[3]We take this occasion to observe that although the summary judgment was entered in the presiding department, and the motion to discharge the forfeiture and set aside the summary judgment was accordingly set there, in many respects that motion resembled a motion for reconsideration by the trial judge who originally heard and denied the motion to exonerate the surety. The reporter's transcript of the motion for exoneration shows the same jurisdictional issues were presented in both settings. Normally, motions for reconsideration are heard by the same judge who issued the original order. (Code Civ. Proc., § 1008.) The Constitution vests jurisdiction of the superior court in the court, not in any particular judge or department, and one superior court department does not restrain the judicial act of another department of the same court. (Cal. Const., art. VI, § 4; see *People* v. *Madrigal* (1995) 37 Cal.App.4th 791, 796 [43 Cal.Rptr.2d 498]; see also 2 Witkin, Cal. Procedure (4th ed. 1996) Courts, § 232, pp. 302-305, § 237, pp. 310-312; 5 Witkin & Epstein, Cal. Criminal Law, supra, Trial, § 2475, p. 2973, *id.* (1997 pocket supp.) § 2475, pp. 4-5.) Perhaps, under these circumstances, the better practice would have been for the presiding department to offer the trial court the opportunity to rule on the motion to discharge the forfeiture and set aside the summary judgment, due to the similarity of the issues and the jurisdictional question involved.

## II

### *Statutory Provisions at Issue*

Section 1305.1, as added in 1993, restating in substance former section 1305, subdivision (b), provides: "If the defendant fails to appear for arraignment, trial, judgment, or upon any other occasion when his or her appearance is lawfully required, *but the court has reason to believe that sufficient excuse may exist for the failure to appear, the court may continue the case for a period it deems reasonable to enable the defendant to appear without ordering a forfeiture of bail* or issuing a bench warrant. [¶] If, after the court has made the order, the defendant, without sufficient excuse, fails to appear on or before the continuance date set by the court, the bail shall be forfeited and a warrant for the defendant's arrest may be ordered issued." (Italics added.)

This section immediately follows and was formerly part of section 1305, dealing with the consequences of a defendant's nonappearance, jurisdiction, vacation of forfeiture and exoneration of bond. ■ "The law traditionally disfavors forfeitures and this disfavor extends to forfeiture of bail. [Citation.] Thus, sections 1305 and 1306 must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture." (*People* v. *Surety Ins. Co.* (1985) 165 Cal.App.3d 22, 26 [211 Cal.Rptr. 204].) These sections (§§ 1305-1306 et seq.), creating procedures for forfeiture, are jurisdictional: "This case is controlled by these statutes [§§ 1305, 1306], the provisions of which 'must be strictly followed or the court acts without or in excess of its jurisdiction. [Citation.] . . . [¶] The course set out in a jurisdictional statute must be precisely followed or the court loses jurisdiction and its actions are void. [Citation.]' [Citations.] 'It is well established in the case law that Penal Code sections 1305 and 1306 are subject to precise and strict construction. . . . " '[W]here a statute requires a court to exercise its jurisdiction in a particular manner, follow a particular procedure, or subject to certain limitations, an act beyond those limitations is in excess of its jurisdiction.' [Citations.]" ' [Citation.]" (*People* v. *Topa Ins. Co.* (1995) 32 Cal.App.4th 296, 300 [38 Cal.Rptr.2d 167].)

Within these limits, section 1305.1 nevertheless allows a court to "excuse a bailee's appearance in advance of a hearing if it believes sufficient excuse exists to do so. [Citation.]" (*People* v. *Ranger Ins. Co.* (1994) 31 Cal.App.4th 13, 19 [36 Cal.Rptr.2d 807].) There, the court explained: *"This statutory provision creates a limited exception to the general rule that a failure to appear requires the court to order forfeiture of the bail* with prompt notice to the surety. [Citation.] The theory behind this exception is that '[i]f bail forfeiture is required immediately upon the first nonappearance of a defendant, no matter how valid his reason for nonappearance be, such defendant

would be subjected not only to having his bail forfeited but the additional penalty of possibly being required to pay another premium for its reinstatement.' [Citation.] Accordingly, the court can continue a hearing and still retain its jurisdiction to declare a forfeiture at a later time as long as it has a reason to believe that a sufficient excuse exists for the nonappearance. [Citation.] 'In most situations involving a section 1305, subdivision (b) [now (§ 1305.1] determination the only reasons before the trial court are the evidence or representations furnished by defendant's counsel. The cases demonstrate that the courts have cooperated with defense counsels' requests and have liberally relied on their representations.' (*People* v. *National Automobile & Cas. Ins. Co.* (1977) 75 Cal.App.3d 302, 306 [142 Cal.Rptr. 98].)" (*People* v. *Ranger Ins. Co., supra,* 31 Cal.App.4th at p. 19, italics added.)

This authority raises and answers two questions: What showing must be made to the court of sufficient excuse for nonappearance, and what record must document such a showing? The latter question is more easily answered: The entire record may be considered, and the excuse no longer need be expressly set out in the minutes. The 1969 amendment to section 1305 "abolished the requirement that the existence of an excuse must actually exist and be set forth in the minutes. [Citations.]" (*County of Los Angeles* v. *Surety Ins. Co.* (1985) 165 Cal.App.3d 948, 950 [212 Cal.Rptr. 69].) Rather, for policy reasons, a continuance should be allowed where the trial court is given enough information to find sufficient excuse, even if the details of same are not specified in the minutes: "If a trial court, on a first nonappearance, suspects that some good excuse exists, the public interest—which prefers the appearance of a defendant rather than a monetary penalty—is best served by encouraging a bondsman to increase its own efforts to locate the defendant and produce him in court in order to avoid a forfeiture and not to induce the bondsman to feel that further effort by him would be materially unproductive." (*Id.* at p. 950, fn. omitted.)[4]

Also, the reporter's transcript, as opposed to the minutes, may now supply a sufficient record of sufficient excuse. (*People* v. *Ranger Ins. Co., supra,* 31 Cal.App.4th at p. 19.) Here, the minutes do not explain the nature of the excuse found, but the reporter's transcript does. Although it is not completely clear from its brief, Amwest does not appear to argue that the format

[4]In *People* v. *Wilcox, supra,* 53 Cal.2d at page 657, the Supreme Court set out two policy considerations that are invalid in this context: recovery of revenue by the state and punishment of the surety.

of the record is defective here, but rather that the substance of the excuse claimed was insufficient.[5]

Thus, moving on to the question of what circumstances the trial court may deem to provide sufficient excuse for nonappearance to grant a continuance, we find these standards in the case law: "In order for the court to have reason to believe that sufficient excuse may exist, our Supreme Court has stated in a similar context there must be 'some rational basis' for belief at the time of defendant's nonappearance that sufficient excuse may exist. (Cf., *People* v. *United Bonding Ins. Co.* [(1971)] 5 Cal.3d [898,] 906 [98 Cal.Rptr. 57, 489 P.2d 1385].)" (*People* v. *Surety Ins. Co.* (1984) 165 Cal.App.3d 22, 27 [206 Cal.Rptr. 836].) Analogizing from the declaration of forfeiture provisions regarding the timing of forfeiture after a bailee's failure to appear, to the continuance language now before us, the Court of Appeal stated this Supreme Court reasoning was equally applicable in both instances: "The Supreme Court's language and reasoning on this issue in *United Bonding* appear equally applicable to an interpretation of the language added to the statute in 1969, as it would be impossible for a trial court, in the exercise of sound judicial discretion, to have 'reason to believe that sufficient excuse may exist' for a nonappearance if there were not some basis in fact for such a conclusion. (§ 1305, subd. (b).) There could be no good faith 'belief' to support a delay in ordering forfeiture that was not grounded in 'some rational basis.' (*People* v. *United Bonding Ins. Co., supra*, 5 Cal.3d at p. 906.)" (*People* v. *Surety Ins. Co., supra*, 165 Cal.App.3d at p. 27, italics omitted.)

What types of showings have supported trial court findings of a "rational basis" for such belief? No rigid rules have been developed by the case law, and a case-by-case analysis is always performed. (See *People* v. *National Automobile & Cas. Ins. Co.* (1977) 75 Cal.App.3d 302, 306-307 [142 Cal.Rptr. 98].) In *People* v. *Surety Ins. Co., supra*, 165 Cal.App.3d at pages 27-28, it was found to be an insufficient showing of excuse where the trial court acknowledged, " 'there's no reason I'm aware of why the Defendant should not be here to hear whatever action the Court desired to take [in the matter of the continuance requested by defense counsel].' " Similarly, in *People* v. *Surety Ins. Co.* (1984) 160 Cal.App.3d 963, 969 [206 Cal.Rptr. 836], it was held insufficient to justify such a continuance where the defendant was absent without explanation and defense counsel merely represented that he would "endeavor to have [defendant] brought in." The court

---

[5]We agree with the People that this case does not present facts on which to decide if sufficient excuse can be found where there is no reporter's transcript, and where the minutes do not contain the relevant information. The record here includes a reporter's transcript and is sufficient to decide the issues presented; we need not go beyond that record.

stated this was "not an explicit or implicit excuse from which a court could reasonably believe the defendant was absent with an excuse. . . . [¶] The absence of any statements or actions by defendant or his counsel, from which it could be implied that defendant had justification for his absence, compels the conclusion that the trial court did not have reason to believe that sufficient excuse may have existed for defendant's failure to appear or surrender himself. Accordingly, the trial court did not retain jurisdiction to declare a forfeiture." (*Ibid.*)

In contrast, a sufficient excuse for nonappearance has been found where a trial court advanced and reset the sentencing hearing, rather than ordering a forfeiture at that time, where a defendant had not appeared but the defense counsel told the court the defendant's mother had terminal cancer and wanted her family with her. (*People* v. *Ranger Ins. Co., supra,* 31 Cal.App.4th at p. 19.) In a more unusual set of circumstances, the court found no loss of jurisdiction in the trial court when, based on representations by relatives of the defendant that he was dead, it continued the trial of a defendant who did not appear, to investigate the proof (a death certificate). (*County of Los Angeles* v. *Ranger Ins. Co.* (1996) 48 Cal.App.4th 992, 994-996 [56 Cal.Rptr.2d 25].) The purpose of the continuance was to enable the People to verify the death certificate; the court did not forfeit bail. Later, it was found the death certificate was fraudulent. The Court of Appeal found "[t]he trial court's action in continuing the matter, without forfeiting bail, was not only reasonable and within its discretion, but in furtherance of '[t]he law [which] traditionally disfavors forfeitures. . . .' ([*People* v. *United Bonding Ins. Co.* (1971)] 5 Cal.3d [898,] 906 [98 Cal.Rptr. 57, 489 P.2d 1385].)" (*County of Los Angeles* v. *Ranger Ins. Co., supra,* 48 Cal.App.4th at p. 996.) The initial failure to forfeit bail while the situation was being investigated did not cause any loss of jurisdiction by the trial court to do so later.

Several older cases, as summarized in *People* v. *Surety Ins. Co., supra,* 165 Cal.App.3d at pages 29-30, dealt with situations in which defense counsel was able to present the trial court with a sufficient basis to entertain a reasonable belief the defendants' nonappearance may have been with sufficient excuse: "In *People* v. *Wilshire Ins. Co.* [(1975)] 53 Cal.App.3d [256,] 258-261 [125 Cal.Rptr. 529], although the court's minutes failed to reflect any reason for defendant's nonappearance, the reporter's transcript of the proceedings .contained a statement by defense counsel that he believed defendant was appearing in another California jurisdiction on a criminal matter, and that counsel would attempt to have defendant present within the week. The appellate court held that defense counsel's statement to the court was sufficient to support the condition for a continuance set out in section 1305, subdivision (b).

"Again, in *People* v. *Surety Ins. Co.* [(1976)] 55 Cal.App.3d [197,] 199, 201 [127 Cal.Rptr. 451], defense counsel appeared and advised the court his client told him that he had sought medical treatment in a nearby city due to severe internal bleeding. It was held that upon such a representation, the court properly exercised its discretion under section 1305, subdivision (b), to postpone a declaration of forfeiture and grant a short continuance.

"Finally, in *People* v. *National Automobile & Cas. Ins. Co., supra,* 75 Cal.App.3d at pages 304, 306, on a date set for hearing defense counsel related to the court that the clerk of the court had been advised that morning by the defendant's mother that defendant had been in an automobile accident. A three-week continuance pursuant to section 1305, subdivision (b) was granted and defendant appeared at the continued hearing. The report of the probation officer and sentencing was set for the following month. Defendant visited the probation department in the interim but again failed to appear in court on the date set. Although defense counsel had no express explanation for defendant's absence, the appellate court held certain facts, such as defense counsel's concurrence to the one-month continuance requested by the probation department, the defendant's appearance at the continued hearing and later at the probation department, and defense counsel's request to issue but hold a bench warrant until a future hearing date, taken in conjunction with defense counsel's apparent belief that defendant was trustworthy and would appear absent sufficient excuse, gave the lower court 'reason' to believe sufficient excuse may have existed for defendant's absence and reason to grant a short continuance." (*People* v. *Surety Ins. Co., supra,* 165 Cal.App.3d at pp. 29-30.)

III

*Application of Authority*

Turning to the facts of our case, an attorney specially appearing for Martin's attorney indicated to the court in chambers and in open court "that there may be an emergency Mr. Martin attended to, and he may be—Mr. Avina [*sic*], and he may be available tomorrow morning." The prosecutor did not object to holding the warrant until the next day. Martin appeared at the continued readiness conference the next morning, the bench warrant was rescinded, and the trial date was confirmed. He did not appear at trial, and the bail was forfeited at that time. Under the standards set forth above, the trial court was given ample reason to believe, based on authorized representations of counsel, that "sufficient excuse may exist for the failure to appear" (§ 1305.1), within the meaning of the section and the overall statutory scheme in which it appears. The court thus had authority and discretion to

continue the case for a period it deemed reasonable to enable the defendant to appear without ordering a forfeiture of bail. This approach was consistent with "[t]he law [which] traditionally disfavors forfeitures . . . ." (*People* v. *United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 906 [98 Cal.Rptr. 57, 489 P.2d 1385].) As the trial court stated, public policy considerations are in accord, supporting an exercise of discretion in this manner. (See *County of Los Angeles* v. *Surety Ins. Co., supra*, 165 Cal.App.3d at p. 950.)

Accordingly, there was no loss of jurisdiction to declare forfeiture later, as the situation developed, because the court was not required under the original circumstances to declare an immediate forfeiture where defense counsel had been able to present the trial court with a sufficient basis to entertain a reasonable belief the defendant's nonappearance may have been with sufficient excuse. It was error for the presiding department to set aside the summary judgment forfeiting Amwest's bail bond.

Since we have determined the summary judgment was properly entered, it follows that the award of $400 costs by the trial court pursuant to section 1305.3 must be reinstated.[6] In addition, the People in their opening brief have sought an award of costs under the same section. We believe the costs incurred "in collecting on the summary judgment" include in this case the costs of participating in the underlying motion proceedings on the motion to discharge the forfeiture, set aside the summary judgment and exonerate bail. The People may seek an award of such costs in the trial court. In addition, the People will recover costs on appeal. (Cal. Rules of Court, rule 26(a).)

### DISPOSITION

The order granting the motion to discharge the forfeiture, set aside the summary judgment and exonerate bail is reversed and the summary judgment and costs order are reinstated, with such further proceedings to take place as necessary to adjudicate a further award of costs under section 1305.3. The People are to recover costs on appeal.

Kremer, P. J., and McIntyre, J., concurred.

A petition for a rehearing was denied August 19, 1997, and respondent's petition for review by the Supreme Court was denied November 12, 1997.

---

[6]Section 1305.3 provides as follows: "The district attorney, county counsel, or applicable prosecuting agency, as the case may be, shall recover, out of the forfeited bail money, the costs incurred in successfully opposing a motion to vacate the forfeiture and in collecting on the summary judgment prior to the division of the forfeited bail money between the cities and counties in accordance with Section 1463."