Filed 6/24/22  P. v. Accredited Surety and Casualty Co. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>ACCREDITED SURETY AND CASUALTY COMPANY, INC.,<br><br>      Real Party In Interest and Appellant. | A162988<br><br>(Sonoma County Super. Ct. No. SCR6807701) |

Defendant Ronald Mazzaferro was charged with several counts of misdemeanor violating a court order to prevent domestic violence and evading a peace officer in two separate cases, and appellant Accredited Surety and Casualty Company, Inc. (the surety) posted a $100,000 bond that was transferred from one case to the other when the two were consolidated. After defendant failed to appear on November 6, 2019, the trial court ordered bail forfeited and later denied the surety's motion to vacate the forfeiture. The surety contends that bail was exonerated by failure to provide notice of the transfer and that the trial court lost jurisdiction to declare bail forfeited when it did not do so on three dates when defendant did not appear prior to November 6, 2019.  We affirm.

1

## BACKGROUND

On May 3, 2016, in Sonoma County Superior Court Case No. SCR-680697, defendant was charged with two misdemeanors: violating a court order to prevent domestic violence (Pen. Code, § 273.6, subd. (a))[1] and evading a peace officer (Veh. Code, § 2800.1, subd. (a)), both on April 30, 2016. In Sonoma County Superior Court Case No. SCR-680770-1, also filed on May 3, defendant was charged with three more counts of violating a court order to prevent domestic violence (§ 273.6, subd. (a)) on March 22, April 21, and April 25, and with another count of evading a peace officer (Veh. Code, § 2800.1, subd. (a) ) on April 28. The record does not contain the complaint in either case, but the trial court later described the section 273.6 charges as alleging that defendant "violat[ed] an Elder Protection order obtained by his elderly mother."

On May 5, defendant was released from custody when the surety, through its agent Romelli Bail Bonds, posted bond number AF-00863510 in Case No. SCR-680697 in the amount of $100,000. The trial court set a readiness conference in Case No. SCR-680697 for May 24.

On May 24, defendant was present in court. The trial court granted the prosecution's oral motion to consolidate Case No. SCR680697 into Case No. SCR-680770-1. The trial court also ordered that "Bail bond #AF00863510 in the amount of $100,000 [be] transferred into this case from SCR-680697." There is no indication in the record that notice of this transfer was ever given to the surety.

---

[1] Further undesignated statutory references are to the Penal Code.

2

Over the next two years, numerous hearings took place, including approximately twenty hearings where defendant personally appeared.  In 2021, the trial court would later observe:  "[T]his case has had an extraordinarily long history for a misdemeanor.  It has been set for trial repeatedly.  The case has been intensely litigated by defendant throughout its history.  Defendant has filed at least three non-statutory motions to dismiss; more than one demurrer, more than one discovery motion, he filed at least on[e] Petition for Habeas Corpus, and filed at least one Writ Petition."

On July 5, 2018, defendant was not present in court but appeared through counsel pursuant to section 977.[2]  According to the minutes, the prosecution requested a warrant for defendant's non-appearance, the trial court denied the request, and defense counsel then objected to requiring defendant's personal appearance.  The matter was continued until August 31, and the court ordered defendant to be present on that date.

On August 31, defendant was not present.  There is no transcript of the hearing in the record, but the minutes from that date provide that defense counsel appeared and "has been directed to have his client present at the next court hearing," which was set for November 9.

On November 9, defendant was present.

On November 12, the minutes provide:  "People request Defendant ordered to be present Counsel objects to defendant being present Court does not order defendant present."

On February 6, 2019, defendant was not present, and the trial court ordered that he be "personally present at all readiness and trial dates."

---

[2] "In all cases in which the accused is charged with a misdemeanor only, they may appear by counsel only, except as provided in paragraphs (2) and (3)."  (§ 977, subd. (a)(1).)

3

Defendant personally appeared at some six hearings over the following eight months.

On Thursday, October 24, defendant was present, and the trial court set the following dates for pretrial, jury selection, and trial: October 28, 29, 30, and 31, and November 4, 5, 6, 7 and 12.

As the trial court would later explain:

"When court recessed on October 24, 2019, the next scheduled trial date was Monday, October 28, 2020[3]. What became known as the Kincaid fire started on Sunday, October 27, 2020 and the Sonoma County Superior Court was closed the following week. (See, Transcript of Electronic Recording of proceedings on November 4, 2019, p. 1:23-27; the court closure is discussed in the transcript. The closure was also confirmed by General Order Re: Implementation of Emergency Relief Authorized Pursuant to Government Code Section 68115 by Chair of Judicial Council, filed October 29, 2019, Sonoma County Superior Court, deeming Monday, October 28 through Friday, November 1, 2019 to be court holidays, pursuant to Government Code section 68115(a)(1))."

The trial court notified counsel for the parties that trial would resume on Monday, November 4. Defendant was not present on that date. Defense counsel told the trial court: "I represent Ronald Mazzaferro, but he is not present, and I don't know where he is, Your Honor." He went on: "I have tried to call Mr. Mazzaferro, and his voice—it went straight to voicemail. I've left him a text message without any response. [¶] The last time I met with Mr. Mazzaferro was Friday, October 25th, at my office, and we were awaiting for—I guess to see what happened with the fires, et cetera, or you know, we—

---

[3] The references to 2020 appear to be mistakes in the trial court's order, as the rest of the order makes clear that the Kincaid fire took place in 2019.

4

we—it was—the court was cancelled due to the fires." Defense counsel had forwarded the court's message indicating that trial would resume on November 4 to defendant's email, but did not receive any response. The trial court issued and stayed a bench warrant until the next day at 1:30 p.m., in order to "give you 24 hours to get your client in here."

The next day, November 5, defendant was again not present. Defense counsel indicated that he had called, emailed, and sent a text message to defendant, but had not received any response. The trial court then noted: "It appears he may have been downstairs just a bit ago and filed this document. It's another document in the case with no name put at the top. [¶] . . . [¶] It was signed on October 25th. It was filed today. There's no bate stamp indicating it was left at an earlier time." The trial court again issued a bench warrant in the amount of $10,000, "but I will allow Mr. Mazzaferro to be cited to appear tomorrow afternoon at 1:30." The trial court also suggested it was considering making a finding that the defendant had voluntarily absented himself from trial such that it could proceed in his absence: "Again, it appears to me based on a very strong inference that Mr. Mazzaferro is the one who filed this document. So that would mean he's coming to court and simply deciding not to come to trial."

On November 6, defendant was again not present. The trial court found that the defendant had voluntarily absented himself from trial and ordered bail forfeited.

On December 3, the surety filed a motion to vacate the forfeiture and exonerate bail. The surety argued that the bond was exonerated under section 1303 when the court failed to mail notice to the surety that it had transferred bail from case No. SCR-680697 to case No. SCR-680770-1, and that the court lost jurisdiction to declare bail forfeited when it failed to

5

declare a forfeiture when defendant did not appear on August 31, 2018, November 4, 2019, and November 5, 2019.

On January 7, 2021, the prosecution filed a "non-opposition" to the motion, and on January 13, the court requested supplemental briefing "on the propriety of the court continuing the hearings on August 31, 2018, November 4, 2019, and November 5, 2019."

On June 2, the trial court issued a 10-page written order denying the motion. With respect to the transfer of the bond, the trial court found the changes authorized by the bond language because "[t]he action with which [case No. SCR-680697] was consolidated alleged additional violations of . . . section 273.6(a) based on defendant's alleged failure to comply with the terms of the same protective order obtained by his elderly mother."

With respect to the August 31 failure to appear, the trial court found:

"The record adequately discloses the contention over whether defendant should be forced to appear—at a non-trial, non-essential hearing—because the prosecution wanted the court to order the defendant to show up. When the defendant failed to appear and his attorney picked up the argument about the defendant's right to appear through counsel in misdemeanor cases where he had left off at the prior hearing, the court informed defense counsel that the defendant had to come to court at the next hearing [on November 9, 2018]; which he did."

And with respect to defendant's failure to appear on November 4 and 5, 2019: "The uncertainties created by the Kincaid Fire combined with defendant's long history of appearing in court either in person or through counsel, was a sufficient basis to excuse defendant's non-appearance on November 4, 2019," and "[t]he extraordinary circumstance of the Kincade fire, the court closure, and defendant's multi-year history of making his court

6

appearances was a sufficient basis to excuse defendant's non-appearance on November 5, 2019 and to continue the matter for one more day."

Summary judgment was subsequently entered against the surety, from which the surety appeals.

## DISCUSSION

### The Bond Is Not Exonerated For Failure to Comply with the Notice Provisions of Section 1303

### Standard of Review and Applicable Law

Generally, we review an order resolving a motion to vacate a bond forfeiture under an abuse of discretion standard, "subject to constraints imposed by the bail statutory scheme." (*County of Orange v. Lexington Nat. Ins. Corp.* (2006) 140 Cal.App.4th 1488, 1491–1492.) "As the Supreme Court has noted, however, '[t]he abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review. The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to the facts is reversible only if arbitrary and capricious.' " (*County of Los Angeles v. Fairmont Specialty Group* (2009) 173 Cal.App.4th 538, 543.) "[W]here, as here, the facts are uncontested, and the issue concerns a pure question of law, we review the decision de novo." (*People v. Accredited Surety & Casualty Co.* (2018) 26 Cal.App.5th 913, 917; *People v. Amwest Surety Ins. Co.* (1997) 56 Cal.App.4th 915, 919 (*Amwest*).)

The surety argues that it is entitled to exoneration of the bond under section 1303, which provides as follows:

"If an action or proceeding against a defendant who has been admitted to bail is dismissed, the bail shall not be exonerated until a period of 15 days has elapsed since the entry of the order of dismissal. If, within such period,

7

the defendant is arrested and charged with a public offense arising out of the same act or omission upon which the action or proceeding was based, the bail shall be applied to the public offense.  If an undertaking of bail is on file, the clerk of the court shall promptly mail notice to the surety on the bond and the bail agent who posted the bond whenever the bail is applied to a public offense pursuant to this section."

**Analysis**

The surety relies on cases holding that "section 1303 requires the called-for notice of transfer of the bail without regard to similarity of the pleadings or the parties," and "[t]he surety need not show prejudice"— instead, "failure of the court to give notice to the surety within 15 days of the transfer of the bail to the new complaint exonerates the undertaking." (*People v. Surety Ins. Co.* (1983) 139 Cal.App.3d 848, 854; see *People v. Resolute Ins. Co.* (1975) 50 Cal.App.3d 433, 436–437.)  As noted, there is no indication in the record that any notice of the transfer of bail was given to the surety.

But section 1303 is inapplicable, because that section applies only "[i]f an action or proceeding against a defendant who has been admitted to bail is dismissed."  The complaint in Case No. SCR-680697 was not dismissed— instead, Case No. SCR-680697 was consolidated into Case No. SCR-680770-1. (See *People v. Bankers Ins. Co.* (2010) 181 Cal.App.4th 1, 7 [section 1303 does not apply where new complaint filed after the bond posted; instead it applies only "when the bail bond posted on one action is transferred to new charges filed soon after the first action is dismissed"]; *People v. International Fidelity Ins. Co.* (2010) 185 Cal.App.4th 1391, 1398–1400 [section 1303 does not apply to amended information based on the same originally pleaded facts].)

8

In addition, the charges in case No. SCR-680770-1 are encompassed by the language of the bond itself, which provides that the surety "hereby undertakes that the above-named defendant will appear in the above-named court on the date above set forth to answer any charge in any accusatory pleading based upon the acts supporting the complaint filed against him/her or in duly authorized amendments thereof, in whatever court it may be filed and prosecuted." Thus, the surety undertook to guarantee defendant's appearance in SCR-680770-1 if the complaint in that action was "based upon the acts supporting the complaint filed against him" in SCR-680697, "or in duly authorized amendments thereof."

As noted, the record does not contain the complaints, or any description of the facts underlying the charges, in either SCR-680697 or SCR-680770-1.[4] However, both cases involve violations of section 273.6, subdivision (a) in a similar time frame—March and April of 2016. And according to the trial court's order, "[t]he action [No. SCR-680770-1] with which [No. SCR-680697] was consolidated alleged additional violations of Penal Code section 273.6(a) based on defendant's alleged failure to comply with the terms of the same protective order obtained by his elderly mother." Under these circumstances, the allegations in No. SCR-680770-1 arise from the same course of conduct as those in No. SCR-680697, and the bond covers both. (See *People v. Indiana Lumberman's Mutual Insurance Company* (2012) 202 Cal.App.4th 1541,

---

[4] Neither party's brief contains any description of the facts underlying the complaints against defendant, but the surety does not dispute the trial court's characterization of those facts. And to the extent the record is silent, it must be construed against the surety's argument of error. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 609 [" 'Consequently, [the appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant]' "].)

9

1549–1550 [finding consolidation covered by identical bond language where two complaints were "based upon the same course of conduct"]; *People v. International Fidelity Ins. Co.*, *supra*, 185 Cal.App.4th at pp. 1397–1398 [finding identical bond language covers "charges or enhancements [that] arise out of the same facts that were alleged in the original complaint"]; *People v. Bankers Ins. Co.*, *supra*, 181 Cal.App.4th at pp. 6–8 [similar].)

**The Trial Court Did Not Abuse Its Discretion in Finding Sufficient Excuse on August 31, 2018, and November 4 and 5, 2018**

**Applicable Law**

Under section 1305, subdivision (a)(1), "[a] court shall in open court declare forfeited the undertaking of bail or the money or property deposited as bail if, without sufficient excuse, a defendant fails to appear" for any occasion where his or her presence in court is "lawfully required." However, section 1305.1—added in 1993, and restating in substance former section 1305, subdivision (b)—provides: "If the defendant fails to appear for arraignment, trial, judgment, or upon any other occasion when his or her appearance is lawfully required, but the court has reason to believe that sufficient excuse may exist for the failure to appear, the court may continue the case for a period it deems reasonable to enable the defendant to appear without ordering a forfeiture of bail or issuing a bench warrant."

In considering a previous version of the statute that provided that the court must declare bail forfeited " 'if, without sufficient excuse, the defendant neglects to appear' " when lawfully required, our Supreme Court explained that "[t]he failure to so declare an immediate forfeiture upon the nonappearance of a defendant bailee can be justified only where there is some rational basis for a belief at the time of his nonappearance that there exists a sufficient excuse therefor," and "[w]hat constitutes a sufficient excuse

10

generally rests within the sound discretion of the trial judge . . . ." (*People v. United Bonding Ins. Co.* (1971) 5 Cal.3d 898, pp. 903, fn.4, 906–907 (*United Bonding*).)

Courts have since applied this same reasoning to the "reason to believe that sufficient excuse may exist" language now contained in section 1305.1: "The Supreme Court's language and reasoning on this issue in *United Bonding* appear equally applicable to an interpretation of the language added to the statute in 1969, as it would be impossible for a trial court, in the exercise of sound judicial discretion, to have 'reason to believe that sufficient excuse may exist' for a nonappearance if there were not some basis in *fact* for such a conclusion. (§ 1305, subd. (b) [now § 1305.1].) There could be no good faith 'belief' to support a delay in ordering forfeiture that was not grounded in 'some rational basis.' " (*People v. Surety Ins. Co.* (1985) 165 Cal.App.3d 22, 27, quoting *United Bonding, supra,* 5 Cal.3d at p. 906; see *Amwest, supra,* 56 Cal.App.4th at p. 923.)

Importantly, "the test is not whether it has been conclusively demonstrated a defendant had an actual and valid excuse for his nonappearance to justify continuing a hearing without declaring a bail forfeiture." (*People v. Ranger Ins. Co.* (2003) 108 Cal.App.4th 945, 953 (*Ranger*).) Section 1305.1 "requires the court [to] only have 'reason to believe that sufficient excuse *may* exist for the failure to appear.' " (*Ranger*, at p. 953, fn. omitted, quoting § 1305.1.)

The factual basis for the sufficient excuse finding must appear somewhere in the trial court record—in the minutes or in the reporter's transcript. (See *People v. The North River Ins. Co.* (2019) 37 Cal.App.5th 784, 797 (*North River*); *Amwest, supra,* 56 Cal.App.4th at p. 922; *People v. Frontier Pacific Ins. Co.* (1998) 63 Cal.App.4th 889, 895–896.)

"The law traditionally disfavors forfeitures and this disfavor extends to forfeiture of bail. (*People v. United Bonding Ins. Co.*[, *supra*,] 5 Cal.3d [at p.] 906.) Thus, sections 1305 and 1306 must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture. [Citation.]" (*People v. Surety Ins. Co.*, *supra*, 165 Cal.App.3d at p. 26.) This is in part because "the public interest . . . prefers the appearance of a defendant rather than a monetary penalty." (*County of Los Angeles v. Surety Ins. Co.* (1985) 165 Cal.App.3d 948, 950.)

"Where a statute such as section 1305, subdivision (b) [now section 1305.1], requires a court to exercise its jurisdiction in a particular manner, to follow a particular procedure, *or to perform subject to certain limitations*, an act beyond those limits is in excess of its jurisdiction. [Citations.]" (*People v. Surety Ins. Co.*, *supra*, 165 Cal.App.3d at p. 26.) Thus "[i]f the court fails to declare a forfeiture *at the time* of the defendant's unexcused absence, it is without jurisdiction to do so later." (*People v. Safety National Casualty Corp.* (2016) 62 Cal.4th 703, 710 (*Safety National*).)

We review a trial court's finding of sufficient excuse for abuse of discretion. (See *United Bonding*, *supra*, 5 Cal.3d at pp. 906–907 ["What constitutes a sufficient excuse generally rests within the sound discretion of the trial judge"]; *Ranger*, *supra*, 108 Cal.App.4th at p. 952 ["The determination whether an excuse is sufficient is a matter within the trial court's discretion"]; *People v. Bankers Ins. Co.* (2020) 57 Cal.App.5th 418, 425–426 [reviewing finding of sufficient excuse for abuse of discretion]; *People v. Financial Casualty & Surety, Inc.* (2017) 14 Cal.App.5th 127, 135 [same].)[5]

---

[5] The surety argues that because the facts are undisputed, we are faced with a pure question of law that we review de novo. (See *County of Los Angeles v. Financial Casualty & Surety, Inc.* (2018) 5 Cal.5th 309, 314.) But

"In most situations involving a section 1305, subdivision (b) [now section 1305.1] determination the only reasons before the trial court are the evidence or representations furnished by defendant's counsel.  The cases demonstrate that the courts have cooperated with defense counsels' requests and have liberally relied on their representations."  (*People v. Nat'l Auto. & Cas. Ins. Co.* (1977) 75 Cal.App.3d 302, 306.)

By way of example, sufficient excuse has been found where defense counsel represented that defendant's mother was dying of cancer (*People v. Ranger Ins. Co.* (1994) 31 Cal.App.4th 13, 17, 19–20); in a situation where "there may be an emergency [defendant] attended to, and he may be . . . available tomorrow morning" (*Amwest, supra*, 56 Cal.App.4th at pp. 925–926); where defense counsel's "client had told him that he had gone to Stockton for medical treatment due to severe internal bleeding" (*People v. Sur. Ins. Co.* (1976) 55 Cal.App.3d 197, 199); and where defense counsel stated "there's a possibility [defendant] might be in the San Francisco area" because "[t]here's also another action pending in San Francisco" (*People v. Wilshire Ins. Co.* (1975) 53 Cal.App.3d 256, 258).  Even vague representations by counsel have been found sufficient—i.e., where defendant had never previously failed to appear and defense counsel was "concerned something has happened."  (See *Ranger, supra*, 108 Cal.App.4th at p. 953.)

**August 31, 2018**

The surety does not discuss the trial court's reasons for finding sufficient excuse may have existed on August 31, 2018, simply asserting that

---

the first case cited by the surety does not involve appeal from a trial court's finding of sufficient excuse under section 1305.1. (See *People v. Am. Bankers Ins. Co.* (1992) 4 Cal.App.4th 348, 350–351.)  The second case does not involve bond forfeiture at all.  (See *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712.)  We will follow the authorities cited in the text and conclude that the better view is that our review is for abuse of discretion.

13

"[t]here is no indication in the minutes of any excuse, factual or otherwise, for the failure to appear." We disagree.

The minutes for July 5, 2018 provide: "People request a warrant for Defendant's nonappearance. Court denies request. Defense Counsel objects to personal appearance Matter continued to 8-31-18 8:30am Courtroom 4, Further Proceedings Defendant ordered to be present 8-31-18."

On August 31, defendant was not present. And the minutes provide: "Defendant not present Defense counsel appearing: J. Lemmon Counsel has been directed to have his client present at the next court hearing."

In its order denying the motion to vacate the forfeiture, the trial court later explained:

"The record adequately discloses the contention over whether defendant should be forced to appear—at a non-trial, non-essential hearing— because the prosecution wanted the court to order the defendant to show up. When the defendant failed to appear and his attorney picked up the argument about the defendant's right to appear through counsel in misdemeanor cases where he had left off at the prior hearing, the court informed defense counsel that the defendant had to come to court at the next hearing; which he did. As defense counsel later argued, and the record demonstrates: 'Mr. Mazzaferro does not miss court, as the court is well aware.' At that point, this was indisputably true. The record shows that there were no further issues regarding defendant's appearances through counsel. Later in the proceedings, when the court ordered the defendant to be personally present for all trial and pre-trial hearings, defendant complied."

Thus, the record indicates that there was there was some "contention" on July 5 as to whether defendant should be required to personally appear, and that the defense counsel objected to such appearance. On August 31,

14

defense counsel "picked up the argument . . . where he had left off at the prior hearing," an argument that was resolved by the trial court ordering that the defendant appear at the *next* hearing—held on November 9—which he did. Although the minutes of July 5 indicate that "[d]efendant ordered to be present 8-31-18," there was apparently some lack of clarity around that order because of defense counsel's objection to requiring defendant's personal appearance and his argument that he could appear through counsel, an argument which was not definitively resolved until the hearing on August 31. In short, the record admits the possibility that defendant was not unequivocally required to be present on August 31 or that his counsel did not so inform him. (See *People v. Financial Casualty & Surety, Inc.* (2017) 14 Cal.App.5th 127, 131, 135 [defendant may have had excuse where defense counsel indicated he may have been "confused" by "issuance of two separate court dates"]; *People v. Frontier Pacific Ins. Co.* (2000) 83 Cal.App.4th 1289, 1293 [finding excuse where there was "confusion" as to whether defendant was required to appear and he had "appeared at every previous hearing and throughout the trial"].) The trial court did not abuse its discretion in concluding that defendant may have had sufficient excuse for his non-appearance on August 31.

**November 4 and 5, 2018**

Again, the surety does not address the trial court's reasoning behind its finding of sufficient excuse on November 4 or 5, 2019—its opening brief does not even mention the Kincaid fire. It simply asserts that "the transcripts of the hearings held on November 4, and 5 do not contain any excuse for the defendant's failure to appear in court as lawfully required." Again, we disagree.

On Thursday, October 24, defendant was present in court and ordered to return on Monday, October 28. On Friday the 25th, defendant met with defense counsel at his office, waiting "to see what happened with the fires." However, over the weekend, the Kincaid fire began, resulting in the closure of the courthouse for the entire week of October 28. The trial court informed defense counsel, through its judicial assistant, that trial would resume on Monday November 4, and defense counsel forwarded that message to his client's email but did not receive any response. On November 4, defense counsel indicated that he had called and texted defendant, but had not seen or heard from him since October 25th. Thus, the record supported the inference that defendant may have had sufficient excuse for his non-appearance on November 4, either because of the Kincaid fire itself or because the fire prevented him from receiving notice that trial was to resume on that date. (See *People v. Financial Casualty & Surety, Inc.*, *supra*, 14 Cal.App.5th at pp. 131, 136; *People v. Frontier Pacific Ins. Co.*, *supra*, 83 Cal.App.4th at p. 1293.)

In addition, defense counsel noted that "Mr. Mazzaferro does not miss count, as the court is well aware. I don't think he's ever missed court." Indeed, at this point, with the exception of the August 31 non-appearance discussed above, defendant had personally appeared in court each and every time he was ordered to do so— approximately 28 times over a period spanning two years and four months. The trial court could permissibly conclude from this long history of attendance that the defendant's absence on November 4 was with excuse. (See *Ranger*, *supra*, 108 Cal.App.4th at p. 953 [defendant's past history of making court appearances "over a several month period provided a 'rational basis for believing there might be a sufficient excuse for the defendant's absence"].)

In sum, as the trial court put it: "The uncertainties created by the Kincaid Fire combined with defendant's long history of appearing in court either in person or through counsel, was a sufficient basis to excuse defendant's non-appearance on November 4, 2019." We agree.

As the trial court explained, "[t]he circumstances known to the court on November 5, 2019 were not markedly different than the circumstances known to the court on November 4, 2019." Defense counsel had still not had any contact with defendant, despite having called, emailed, and texted him. There was still no indication that defendant had ever received notice that the trial was set to resume on November 4. Although a document had been filed in the case, evidently on November 5, there was no confirmation that defendant had filed it himself. In short, the situation was essentially unchanged from the day before. The trial court did not abuse its discretion in concluding that defendant's non-appearance may have again been with sufficient excuse.

## DISPOSITION

The judgment is affirmed.

17

_____
Richman, Acting P. J.

We concur:

_____
Stewart, J.

_____
Mayfield, J. *

_People v. Accredited Surety and Casualty Company, Inc._ (A162988)

     *Judge of the Mendocino Superior Court, Judge Cindee Mayfield, sitting as assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18